**Christopher SHIPLET, Plaintiff–Appellant,**

**v.**

**COLORADO DEPARTMENT OF REVENUE, Division of Motor Vehicles, acting by and through its Executive Director, Roxie Huber, Defendant–Appellee.**

No. 10CA0677.

Colorado Court of Appeals,
Div. VII.

April 14, 2011.

Rehearing Denied May 19, 2011.

Nancy C. Johnson, Lakewood, Colorado, for Plaintiff–Appellant.

John W. Suthers, Attorney General, Cathern H. Smith, Assistant Attorney General, Denver, Colorado, for Defendant–Appellee.

Opinion by Judge BOORAS.

Christopher E. Shiplet appeals the district court's judgment affirming an order of a hearing officer of the Colorado Department of Revenue, Motor Vehicle Division (Department). The order revoked Shiplet's driving privileges for refusing to submit to blood or

breath testing for alcohol impairment as required by Colorado's express consent law, section 42–4–1301.1(2)(a)(I), C.R.S.2010. We affirm.

## I. Background

Shiplet was arrested for driving under the influence of alcohol (DUI) after police pulled him over for reckless driving and observed signs that Shiplet was alcohol impaired. Officer John Akins, who placed Shiplet under arrest, determined that Shiplet was hearing impaired. Akins thereafter used a pad of paper and pen to communicate with Shiplet in writing. Shiplet refused Akins's attempts to administer breath or blood tests, and his driver's license was revoked.

Thereafter, Shiplet challenged the revocation at an administrative hearing. The hearing officer sustained the revocation for nine months. Shiplet then sought review in the district court, which affirmed the order of revocation. This appeal followed.

## II. Revocation Determination

At the administrative hearing, Akins and Shiplet both testified, Shiplet through a sign-language interpreter. Akins testified that he asked Shiplet, by writing it down on paper, whether he chose to have his blood or breath tested for alcoholic content. Shiplet wrote "blood." He testified that Shiplet then refused to sign the consent form for a blood draw or to sign the refusal form, despite acknowledging (by nodding his head) that he understood the forms. Akins testified that he then offered Shiplet a chance to take a breath test, which Shiplet agreed to by signing a consent form, but he subsequently refused to take that test.

Shiplet testified that he did not understand what Akins was writing down or the forms presented to him. He also testified that he requested an interpreter by "signing it": "[Y]ou know, I was trying to use like a home sign, you know, made up sign, you know, I signed and said, you know, call, and then I tried to gesture with my hands to get an interpreter to come, and he said no." The hearing officer rejected Shiplet's contentions that he did not understand Akins without the aid of an interpreter, finding that Shiplet "understood his obligation to take a blood or breath test but refused to do so." He found Shiplet's testimony "unbelievable." He also determined that "communicating in writing during a DUI arrest on the street is a sufficient provision of services that assist in effective communication with a person who is deaf or hard of hearing."

### A. Factual Findings

Shiplet contends that the hearing officer erred in determining that he could understand, and therefore appropriately decline, the express consent form he was given. We disagree.

#### 1. Standard of Review

On appeal, we determine whether the record contains sufficient evidentiary support for the hearing officer's decision. *Stamm v. City & Cnty. of Denver*, 856 P.2d 54, 58 (Colo.App.1993).

#### 2. Analysis

■ Colorado's express consent statute provides that all drivers are required to take, and to cooperate in the taking and completing of, a BAC test when requested to do so by an officer with probable cause that the individual was driving under the influence. If the driver refuses to take or cooperate in the completion of the test, the Department of Revenue is required to revoke the driver's license for a period of one year.

*Gallion v. Colo. Dep't of Revenue*, 171 P.3d 217, 219 (Colo.2007); *see also* § 42–4–1301.1(2)(a)(I). In reviewing whether revocation was appropriate, the court should take into account the driver's external manifestations of unwillingness to take or cooperate in the completion of the test. *See Gallion*, 171 P.3d at 220; *Dolan v. Rust*, 195 Colo. 173, 175, 576 P.2d 560, 562 (1978) (noting that the driver's subjective state of mind or later recollection of events are irrelevant).

■ The record supports the hearing officer's determination that Shiplet "understood his obligation to take a blood or breath test but refused to do so." Shiplet showed that he understood by writing "blood" when Akins

asked him whether he would prefer a blood or breath test. Akins showed Shiplet a series of written forms covering both consent to and refusal of the tests and testified that Shiplet "clearly indicate[d]" that he understood the forms. Shiplet also manifested a clear unwillingness to participate in blood or breath testing, physically refusing to cooperate in the steps required to take the tests. *See Dolan,* 195 Colo. at 175, 576 P.2d at 562. Although Shiplet testified on his own behalf that he "didn't understand at all" the express consent form, the hearing officer found that Shiplet's testimony was not credible. "[T]he determinations concerning the credibility of the witnesses, the weight to be given to the evidence, and the resolution of any evidentiary conflicts are factual matters solely within the province of the hearing officer to decide as the trier of fact." *Baldwin v. Huber,* 223 P.3d 150, 152 (Colo.App.2009) (citing *Charnes v. Lobato,* 743 P.2d 27, 32–33 (Colo.1987)). Where the evidence is conflicting, we will not substitute our judgment for that of the fact finder. *Marek v. State,* 709 P.2d 978, 979 (Colo.App.1985).

### B. Applicability of Section 13–90–204

Shiplet also contends that section 13–90–204, C.R.S.2010, required that Akins procure a qualified sign language interpreter to help Shiplet communicate. We disagree.

### 1. Standard of Review

We review the interpretation of a statute de novo. *Barfield v. Hall Realty, Inc.,* 232 P.3d 286, 289 (Colo.App.2010).

### 2. Analysis

■ Section 13–90–204 applies only in a limited number of circumstances. Shiplet calls our attention to subsection (1)(d), which requires an interpreter or auxiliary service "[w]hen a person who is deaf or hard of hearing is arrested and taken into custody for an alleged violation of a criminal law." At the time of the conversation between Akins and Shiplet, Shiplet was under arrest for DUI, a criminal offense. § 42–4–1301(1), C.R.S.2010. However, the statute specifies that an interpreter or auxiliary service be provided "prior to any attempt to notify the arrestee of his or her constitutional rights and prior to any attempt to interrogate or to take a statement from such person." § 13–90–204(1)(d). In this case, the only communication in question is the exchange between Shiplet and Akins regarding the blood or breath testing. We conclude that this exchange does not constitute an attempt to interrogate or take a statement. Our supreme court, without deciding the issue, has indicated that such communication must be "interrogation" before it could implicate the requirements of former section 13–90–201(1)(d), the predecessor to section 13–90–204(1)(d). *See People v. Harper,* 726 P.2d 1129, 1132 (Colo.1986).

■ The United States Supreme Court has held that, at least for *Miranda* purposes, a request for a blood test in connection with a DUI arrest is not an interrogation. *South Dakota v. Neville,* 459 U.S. 553, 564 n. 15, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983). We agree, because any person operating a motor vehicle in Colorado must comply with breath and blood testing when requested by a police officer with probable cause for believing the person was violating the DUI laws. § 42–4–1301.1(2)(a)(I). Such testing is a routine part of the DUI arrest, rather than an interrogation. *See Rhode Island v. Innis,* 446 U.S. 291, 301, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980) (excluding police words or actions "normally attendant to arrest and custody" from the definition of "interrogation"). We therefore conclude that a police officer's request for blood or breath testing is not interrogation and does not entitle a defendant to the provision of a qualified interpreter or auxiliary service under section 13–90–204.

■ Shiplet also directs us to subsection (1)(f) of section 13–90–204, which requires an interpreter or auxiliary service

[w]hen effective communication cannot be established without an auxiliary service and when an alleged victim or witness is a person who is deaf or hard of hearing, who uses sign language for effective communication, and who is questioned or otherwise interviewed by a person having a law enforcement or prosecutorial function in any criminal investigation, except where the

length, importance, or complexity of the communication does not warrant provision of an auxiliary service.

This subsection plainly does not apply to Shiplet because he was not a victim or witness being interviewed as part of a criminal investigation.

Because section 13–90–204 did not apply in this case, we need not consider whether Akins's writing notes to communicate with Shiplet met the definition of "qualified interpreter or auxiliary service" under the statute.

### C. Americans with Disabilities Act

■ Shiplet makes fleeting reference to violations of the Americans with Disabilities Act (ADA). However, Shiplet has failed to indicate where he raised the issue of ADA compliance at his hearing below. We therefore decline to reach this issue. C.A.R. 28(k); *O'Quinn v. Baca,* 250 P.3d 629, 632 (Colo.App.2010) (noting that the court is under no obligation to search the record to determine whether an issue was raised and resolved, and that "parties 'should not expect the court to peruse the record without the help of pinpoint citations'" (quoting *L.S.F. Transp., Inc. v. Nat'l Labor Relations Bd.,* 282 F.3d 972, 975 n. 1 (7th Cir.2002))).

### III. District Court's Order

■ Shiplet argues that the district court "impermissibly took judicial notice" of his driving record in order to "make its own credibility determination." However, "[t]he role of this court is to consider whether there is sufficient evidentiary support in the record for the decision of the *administrative tribunal,* and not whether there is evidence to support the decision of the district court." *Stamm,* 856 P.2d at 58 (emphasis added). Therefore, we need not address Shiplet's allegations of error in the district court's ruling.

The judgment is affirmed.

Judge BERNARD and Judge TERRY concur.