### In re the MARRIAGE OF David Q. TOGNONI, Appellant and Cross–Appellee,

### and

### Patricia A. Tognoni, Appellee and Cross–Appellant.

### No. 10CA1138.

Colorado Court of Appeals, Div. VI.

Nov. 10, 2011.

Dufford & Brown, P.C., Mechelle Y. Faulk, Christian D. Hammond, Denver, Colorado, for Appellant and Cross–Appellee.

Antonio Bates Bernard, P.C., Sandra Lilley, Denver, Colorado, for Appellee and Cross–Appellant.

Opinion by Judge HAWTHORNE.

In this post-dissolution of marriage matter between David Q. Tognoni (husband) and Patricia A. Tognoni (wife), husband appeals the judgment awarding wife child support arrearages, interest, and attorney fees. Wife cross-appeals the attorney fees amount. We affirm the arrearages and interest judgment, vacate the attorney fees award, and remand for further proceedings.

## I. Noncompliance with Appellate Rules

Initially, we note that husband's opening brief and wife's opening-answer brief fail to comply with C.A.R. 32(f)'s certificate of compliance requirement, and are therefore subject to being stricken. *See* C.A.R. 38(e). We admonish both parties to comply with these rules. They are not mere technicalities, but facilitate our appellate review. *See O'Quinn v. Baca*, 250 P.3d 629, 631 (Colo.App.2010).

## II. Factual and Procedural History

In 1995, the trial court entered judgment against husband for $58,314.31 in unpaid child support and interest under the parties' dissolution decree. Husband did not seek post-judgment relief, nor did he appeal. He did, however, twice move to modify child support, first in 1997 and again in 1998, contending that his income had changed significantly and that he was unable to pay the amount ordered. In 1998, the trial court modified child support and ordered that future payments be credited first toward husband's current obligation, then to any arrearages under the modified order, and then to his past arrearages (the 1998 order). Husband did not appeal this order.

In 2009, wife requested that judgment enter for $99,831.05 in child support arrearages, for $210,092.24 in interest, and for her attorney fees. The trial court entered judgment for the arrearages and interest but denied attorney fees. Thereafter, the court accepted the parties' stipulation to vacate the judgment and ordered them to submit their arrearages and interest calculations.

Wife claimed that $399,414.24 was owed and moved for summary judgment accordingly. Husband objected and submitted his own calculations, which indicated $399,400 was owed if a 12% interest rate, compounded monthly, was applied pursuant to section 14–14–106, C.R.S.2011, but that $198,868 was owed applying an 8% rate compounded annually. Husband requested a hearing on the issue. In reply, wife requested attorney fees under section 13–17–102(4), C.R.S.2011, contending that husband's position lacked substantial justification. Without conducting a hearing, the trial court entered judgment against husband for $399,400, and awarded wife one half her attorney fees. After the court denied husband relief under C.R.C.P. 59, husband appealed and wife cross-appealed.

## III. Summary Judgment

Husband first contends that the trial court erred by entering summary judgment on the arrearages and interest amount. We disagree.

An appellate court reviews the trial court's order granting summary judgment de novo. *Georg v. Metro Fixtures Contractors, Inc.,* 178 P.3d 1209, 1212 (Colo.2008). Summary judgment is appropriate when there are no genuine material factual issues and the moving party is legally entitled to judgment. *See* C.R.C.P. 56(c); *Georg,* 178 P.3d at 1212. Summary judgment is a drastic remedy, however, and should be granted only when these requirements are clearly met. *Avi-Comm, Inc. v. Colo. Pub. Utils. Comm'n,* 955 P.2d 1023, 1029 (Colo.1998).

### A. Arrearages Amount

The arrearages amounts determined by the parties differed by $14.24, assuming a 12% interest rate compounded monthly as provided under section 14–14–106. The trial court used husband's expert's calculation in entering judgment. Thus, we reject husband's contention that there were material disputed factual issues concerning the arrearages amount.

Husband argues that a disputed factual issue existed because, in response to wife's motion for summary judgment, he asserted that he had paid off the principal of his child support debt to the county Child Support Enforcement Unit (CSEU) in 2009. However, he did not contend that his expert's calculated amount failed to account for this payment. Nor did he argue that his expert's arrearages calculation was incorrect. Thus, the record does not support husband's argument that his principal payment to the CSEU was a material fact preventing the court from entering summary judgment. To the extent husband contends for the first time on appeal that his expert's calculations were incorrect, either because the principal payment was not taken into account or because an incorrect emancipation date for his youngest child was used, we do not address these contentions. *See In re Marriage of Atencio,* 47 P.3d 718, 722 (Colo.App.2002) (appellate court does not address contentions raised for the first time on appeal).

We also reject, for two reasons, husband's contention that the trial court applied his payments incorrectly by not reducing his oldest debt first, as required by *Weston Group, Inc. v. A.B. Hirschfeld Press, Inc.,* 845 P.2d 1162, 1166 (Colo.1993). First, husband's own calculations in his response to wife's motion for summary judgment applied his payments in this fashion, and he may not raise on appeal an error which he himself invited. *See Horton v. Suthers,* 43 P.3d 611, 618 (Colo.2002).

Second, husband did not timely appeal the 1998 order, which established the method for applying child support payments. A notice of appeal must be filed within forty-five days after the trial court enters a final order. C.A.R. 4(a). "The timely filing of a notice of appeal is a jurisdictional prerequisite to appellate review." *In re Marriage of Buck,* 60 P.3d 788, 789 (Colo.App.2002). Thus, we do not address the arrearages payment schedule established in the 1998 order. *See In re Marriage of Warner,* 719 P.2d 363, 364–65 (Colo.App.1986) (trial court did not abuse discretion by refusing to vacate writ of garnishment based on party's arguments attacking the underlying arrearages judgment, from which party did not timely seek relief).

Further, we reject husband's contention that the court should have held a hearing on his factual allegations that he missed child support payments only because he had difficulty keeping a job between 1995 and 2004 and was thus unable to pay. The record reflects that husband made similar allegations in his 1997 and 1998 motions to modify child support and, as previously noted, the court modified child support in its 1998 order. Husband did not appeal from that order. Accordingly, the trial court did not err by refusing to revisit the appropriate child support amount for these previous years.

We are not persuaded otherwise by husband's contention, citing *In re Marriage of Jacobs,* 859 P.2d 914 (Colo.App.1993), and *In re Marriage of Dennin,* 811 P.2d 449 (Colo.App.1991), that equitable considerations require that his arrearages be ameliorated. *Jacobs* involved the obligor's timely request for relief from judgment under C.R.C.P. 60. *See* 859 P.2d at 915. Here, in contrast, husband did not timely seek relief from the underlying judgments at issue and is thus not entitled to such relief now. *See Warner,*

719 P.2d at 364–65; *see also* § 14–10–122(1)(c), C.R.S.2011 (child support payments become final money judgments when due and unpaid and shall not be retroactively modified except as provided in the statute).

In *Dennin,* the obligor father was granted relief from arrearages because he justifiably relied on the mother's agreement to terminate his child support obligation in exchange for his agreement that the child could be adopted by her stepfather. *See* 811 P.2d at 450. The father was granted such relief only for arrearages that accrued before he learned that the adoption never took place. *See id.* at 451. Here, husband raises his difficulty in paying the support amount ordered, which was essentially the same issue raised in his previous motions to modify.

Accordingly, we conclude that the trial court did not err by declining to grant husband a hearing on the particular grounds he raised. *Cf. In re Marriage of Nielsen,* 794 P.2d 1097, 1098 (Colo.App.1990) (ordinary financial hardship resulting from applying child support guidelines is not a basis for deviating from the guidelines).

### B. Interest

■ Husband contends that the trial court erred in finding that it lacked discretion under section 14–14–106 to determine the appropriate interest rate and compounding period to apply to the child support arrearages. We disagree and conclude that a court has no discretion to modify the interest rate or determine the compounding period, as provided under the statute, although such interest may be waived by the judgment creditor.

■ The right to interest, absent an agreement to pay it, is determined by statute. *See In re Marriage of Armit,* 878 P.2d 101, 103 (Colo.App.1994). Statutory interpretation presents legal questions, which we review de novo. *Dubois v. People,* 211 P.3d 41, 43 (Colo.2009). In construing statutes, we seek to effectuate the General Assembly's intent. *Askew v. Indus. Claim Appeals Office,* 927 P.2d 1333, 1337 (Colo.1996). Courts look first to the statutory language, giving words and phrases their commonly accepted

and understood meaning. *Id.; see also In re Marriage of Chalat,* 112 P.3d 47, 54 (Colo. 2005) (where statute is facially clear and unambiguous, reviewing court presumes the General Assembly meant what it clearly said and applies statute as written).

Here, interest was awarded based on husband's expert's interest calculation made under section 14–14–106:

> Interest per annum at four percent greater than the statutory rate set forth in section 5–12–101, C.R.S., on any arrearages and child support debt due and owing may be compounded monthly and may be collected by the judgment creditor; however, such interest may be waived by the judgment creditor....

Husband contends that because "may" rather than "shall," as in section 5–12–102(1)(b), C.R.S.2011, is used in section 14–14–106, the statute's plain language grants the court discretion to "order anywhere from 0% up to 12% interest" and "compound the accrued interest annually or monthly." We disagree for two reasons.

First, the statute's plain language provides discretion solely *to the judgment creditor* whether to collect the increased interest rate, compounded monthly, on child support arrearages. The only actor in this single-sentence statute is the judgment creditor. The court is not mentioned. Consequently, only the judgment creditor can exercise the options authorized in the statute, namely, "may be compounded," "may be collected," and "may be waived."

Second, while repeating the term "may be" in the phrase "may be compounded and *may be* collected by the judgment creditor" gives some credence to husband's contention, it does not render the statute ambiguous. *See In re Marriage of Anthony–Guillar,* 207 P.3d 934, 938 (Colo.App.2009) (if statute is reasonably susceptible of more than one interpretation, it is ambiguous). Husband's interpretation that the statute grants the court discretion to award "0% up to 12%" interest and compound it "annually or monthly" is not reasonable because the statute neither expressly vests discretion in the court nor provides any guidance concerning how such discretion would be exercised. *See*

*In re Marriage of Schutte,* 721 P.2d 160, 162 (Colo.App.1986) (section 14–14–106 interest on child support judgment is analogous to interest awarded pursuant to section 5–12–102(1)(b), and under this statute, trial court is without discretion to deny interest).

Even if we considered section 14–14–106 ambiguous, we would reach the same conclusion for several reasons:

- Had the General Assembly intended to grant the court discretion to vary the interest rate and compounding period, it could have easily added specific language to do so, as it has elsewhere. *See Fullerton v. Cnty. Court,* 124 P.3d 866, 870 (Colo.App.2005) (interpreting statutory language allowing bail "with such sufficient sureties *and* in such sum *as such judge deems proper,*" § 16–19–117(1), C.R.S.2011 (emphasis added), as giving trial court discretion over both the sum of bail and the sufficiency of the surety); *see also, e.g., Pueblo Bancorporation v. Lindoe, Inc.,* 63 P.3d 353, 362 (Colo.2003) (use of market value damages in other statutes shows General Assembly knew how to use phrase).

- Rather than adding such language, in amending section 14–14–106 to its present form, the General Assembly deleted a reference to the court's approval authority. *See* Ch. 185, sec. 1, § 14–14–106, 1981 Colo. Sess. Laws 908 ("Interest at the statutory rate per annum on any arrearages ... may be collected by the judgment creditor *as provided by court order....*") (emphasis added).

- Because of this deletion, the additional clause in section 14–14–106, providing that *such interest* may be waived by the judgment creditor, bolsters the conclusion that now only the judgment creditor has the discretion to either collect or waive interest as calculated under the statute.

- Adopting husband's interpretation would require us to add the words "by the court" following the phrase "may be compounded monthly" in the statute. We cannot rewrite the statute to do so. *See People v. Jaramillo,* 183 P.3d 665, 671 (Colo.App.2008) (courts must respect the legislature's choice of language, and cannot add words to or subtract them from a statute).

Next, we reject husband's contention that because the Colorado Department of Human Services, Division of Child Support Enforcement conducted a study that determined "[c]ounties have the discretion to assess, or decline to assess, interest on arrears," the trial court erred in finding that it had no such discretion. By statute, CSEU is authorized to collect and enforce child support obligations on behalf of an obligee. *See* § 26–13–114(4), C.R.S.2011. Accordingly, in such situations, CSEU is the judgment creditor, and under section 14–14–106's plain language, any discretion provided in the statute resides solely with the judgment creditor. As discussed above, nothing in the statute's plain language suggests that the court has such discretion.

Finally, we reject husband's argument that "chaos would ensue" if only the judgment creditor was afforded discretion over interest because it could be increased or decreased at the "whim of the judgment creditor." The statute's plain language indicates that the legislature has chosen to vest such discretion solely with the judgment creditor, and we may not second-guess its policy choice. *See Colorado Office of Consumer Counsel v. Public Utilities Comm'n,* 42 P.3d 23, 28–29 (Colo. 2002) ("courts do not approve or disapprove the wisdom ... or the desirability of legislative acts" (quoting *Kallenberger v. Buchanan,* 649 P.2d 314, 318 (Colo.1982))); *see also Dep't of Transp. v. City of Idaho Springs,* 192 P.3d 490, 494 (Colo.App.2008) (courts may not rewrite statutes).

Accordingly, the trial court did not err.

### IV. Attorney Fees

■ Husband further contends that the trial court abused its discretion by awarding wife one half her attorney fees without providing him an opportunity to respond to the allegation that his position lacked substantial justification. We agree and remand for further proceedings.

■ The trial court has broad discretion when determining whether to award attorney

fees under section 13–17–102, C.R.S.2011, and absent an abuse of discretion, its decision will not be disturbed on appeal. *In re Marriage of Rodrick,* 176 P.3d 806, 815–16 (Colo. App.2007). We review de novo, however, the legal analysis employed by the court in reaching a decision on attorney fees. *See Colo. Citizens for Ethics in Gov't v. Comm. for Am. Dream,* 187 P.3d 1207, 1220 (Colo. App.2008).

◼ A court may assess attorney fees under section 13–17–102(4), upon a party's or its own motion, when it finds that an attorney or party brought an action, or any part thereof, that lacked substantial justification, meaning that the action was substantially frivolous, substantially groundless, or substantially vexatious. *Rodrick,* 176 P.3d at 815. When deciding whether to award fees under the statute, a court must consider the relevant factors in section 13–17–103(1), C.R.S.2011, and make findings explaining how those factors support concluding that the offending party engaged in improper conduct justifying a fee award. *In re Marriage of Aldrich,* 945 P.2d 1370, 1378–79 (Colo. 1997); *see also In re Talco, Ltd.,* 769 P.2d 468, 475 (Colo.1989) ("Section 13–17–103 contains a nonexclusive list of factors that a court must consider in determining whether to assess attorney fees."); *In re Marriage of Naekel,* 181 P.3d 1177, 1179 (Colo.App.2008) (when a court awards fees under section 13–17–102, it must specifically set forth its reasons, considering the section 13–17–103 factors).

◼ Properly considering these factors requires that the trial court hold an evidentiary hearing when one is requested by the party against whom fees are sought. *See Padilla v. Ghuman,* 183 P.3d 653, 662 (Colo. App.2007) ("Where the trial court awards attorney fees without holding a hearing and without making specific findings pursuant to section 13–17–103(1) ... the court abuses its discretion."); *SaBell's, Inc. v. City of Golden,* 832 P.2d 974, 979 (Colo.App.1991) (party against whom attorney fees are sought under section 13–17–102 is entitled to an evidentiary hearing prior to the decision to award fees).

Here, because the trial court granted summary judgment without a hearing, husband had no opportunity to respond to wife's allegation that his position lacked substantial justification or present evidence concerning section 13–17–103(1)'s factors. We further note that husband requested a hearing for this purpose in his C.R.C.P. 59 motion, which was his first opportunity to do so because wife requested fees in her reply. Accordingly, the attorney fees award must be vacated. On remand, the trial court must conduct a hearing, if husband requests one, to determine whether an attorney fees award is appropriate under section 13–17–102, and consider the relevant section 13–17–103(1) factors. *See, e.g., Pedlow v. Stamp,* 776 P.2d 382, 386 (Colo.1989); *SaBell's, Inc.,* 832 P.2d at 979.

We are not persuaded otherwise by wife's contention that husband received sufficient due process because the court held a reasonableness hearing on her fees. The record reflects that the hearing concerned solely the reasonableness issue, and that the previous order requiring husband to pay fees under section 13–17–102 was not at issue. Thus, because husband was not afforded an opportunity to respond *before* attorney fees were awarded against him, and specifically to challenge whether such an award was appropriate under the statute, remand for a hearing is necessary. *See SaBell's, Inc.,* 832 P.2d at 979; *cf. Bd. of Cnty. Comm'rs v. Auslaender,* 745 P.2d 999, 1001 (Colo.1987) (party against whom fees are sought as a sanction must be given an opportunity to controvert the motion).

Because the fee award must be vacated, we need not address wife's cross-appeal.

## V. Appellate Fees

◼ Wife seeks her attorney fees incurred on appeal under section 13–17–102, contending that the appeal is substantially frivolous. Because husband raised a plausible interpretation of the interest statute and we have concluded that the attorney fees award must be vacated, we do not view the appeal as frivolous, and therefore deny the request. *See In re Marriage of Bayer,* 687 P.2d 537, 540 (Colo.App.1984) ("We do not

view all of the issues raised by the husband as frivolous and, therefore, decline to award costs and attorney fees to wife.").

The judgment concerning child support arrearages and interest is affirmed. The attorney fees award is vacated and the case is remanded to the trial court for further proceedings consistent with this opinion.

Judge LICHTENSTEIN and Judge BOORAS concur.