23CA1944 Marriage of Smith 11-21-2024

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA1944
El Paso County District Court No. 22DR30140
Honorable David Prince, Judge

---

In re the Marriage of

Remington Smith,

Appellant,

and

Cassaundra Alexa Smith, n/k/a Cassaundra Alexa Iler,

Appellee.

---

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division I
Opinion by JUDGE SULLIVAN
J. Jones and Lipinsky, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 21, 2024

---

Travis Law Group, PLLC, Richard M. Travis, Colorado Springs, Colorado, for
Appellant

Cassaundra Alexa Smith, n/k/a Cassaundra Alexa Iler, Pro Se

¶ 1     In this dissolution of marriage proceeding, Remington Smith (husband) appeals the district court's order allocating an increased share of the marital home's equity to Cassaundra Alexa Smith, n/k/a Cassaundra Alexa Iler (wife), and awarding her attorney fees. We affirm in part and reverse in part, and remand the case for further proceedings consistent with this opinion.

## I.     Background

¶ 2     Husband initiated dissolution proceedings in January 2022. During the final orders hearing in November 2022, both parties testified regarding their separate and marital property, including their opinions of the marital home's value.

¶ 3     In its decree of dissolution, the court ordered that the marital home be sold and the proceeds divided between the parties, with 70% going to wife and 30% to husband. The court said that, if the parties couldn't agree on a certain aspect of marketing or selling the home (for example, the listing price or whether to accept an offer), then the parties were to follow the real estate agent's recommendation. The court instructed the parties to either agree on a real estate agent or submit nominations for the court to appoint one. After both parties submitted nominations, the court

appointed Bre Rinkema, one of wife's recommended real estate agents, in January 2023.

¶ 4    In violation of the court's order and unbeknownst to either wife or the court, however, husband had already entered into a listing agreement with his preferred real estate agent, Chelsea Tisdale, with whom he had a romantic relationship, and placed the home under contract.  Concerned that husband's unauthorized sale might reduce her share of the proceeds, wife recorded a notice of lis pendens and filed a separate fraudulent transfer action to stop the pending sale.

¶ 5    In April 2023, the parties stipulated to (1) dismiss the fraudulent transfer action and (2) appoint a different real estate agent, Gytha Hinkle, to list the marital home for sale.  The stipulation explicitly said that it didn't affect the court's prior orders regarding the home's sale.

¶ 6    After Hinkle listed the home for sale at $495,000, husband received an offer for the listing price from the same buyers with whom he previously contracted.  Without consulting wife, and against Hinkle's recommendation, husband immediately accepted the offer.  The sale closed in May 2023.

¶ 7    Based on husband's disregard for the court's orders, wife filed several C.R.C.P. 60(b) motions in which she asked the court to reopen its division of the marital home's equity and increase wife's allocation.  After holding a hearing in September, the court issued a detailed order chronicling husband's repeated misconduct. Although the court didn't value the marital home or the parties' mortgage debt, it estimated the parties' equity in the home at $110,000 and ordered that wife's share be increased from 70% to 80%, resulting in husband having to make an equalization payment to wife of $88,000 (80% of $110,000).  The court also awarded wife a portion of her requested attorney fees.

¶ 8    Husband now appeals.  He contends that the court (1) lacked authority under C.R.C.P. 60(b) to grant wife affirmative relief and violated his right to due process; (2) erred by making unsupported findings regarding the parties' equity in the marital home; and (3) abused its discretion by awarding wife a portion of her attorney fees.  We address each contention in turn.

## II.    Discussion

### A.    "Affirmative Relief" Under C.R.C.P. 60(b) and Due Process

¶ 9    Relying on *Affordable Country Homes, LLC v. Smith*, 194 P.3d 511, 513-16 (Colo. App. 2008), husband first contends that the court abused its discretion by granting wife "affirmative relief" that isn't authorized by C.R.C.P. 60(b).  He also argues that, assuming affirmative relief was available, the court violated his right to due process by failing to notify him that wife could receive both an increased equity allocation in the marital home *and* an award of attorney fees.  We conclude that husband failed to preserve these arguments for appellate review.

### 1.    Additional Background

¶ 10    In her C.R.C.P. 60(b) motion and two amended motions, wife requested that the court apportion to her a larger share of the proceeds from the home's sale as a consequence of husband's misconduct.  She requested, in the alternative, that the court award her the attorney fees and costs that she had incurred due to husband's misconduct, "in addition to her [original 70%] share of the proceeds from the sale of the marital home."

¶ 11     Husband opposed wife's motions by arguing that wife hadn't shown fraud, misrepresentation, or other misconduct that might justify relief under C.R.C.P. 60(b)(2), nor had she shown any other reason justifying relief under C.R.C.P. 60(b)(5). Husband also asserted that wife hadn't alleged sufficient facts to justify revisiting the court's property division and that she improperly sought attorney fees for matters that were either unnecessary, dismissed, or already decided.

¶ 12     At the September 2023 hearing on wife's motions, wife asked the court to award her "100% of the remaining proceeds" from the home's sale *and* "$70,000 of lawyer fees" that she had incurred due to husband's misconduct.

## 2.    Analysis

¶ 13     We conclude that husband failed to preserve for appellate review his argument that C.R.C.P. 60(b) doesn't authorize "affirmative relief." To preserve an issue for appellate review, a party must make a timely objection that is specific enough to provide the trial court with a meaningful opportunity to correct the alleged error. *See Berra v. Springer & Steinberg, P.C.*, 251 P.3d 567, 570 (Colo. App. 2010). Husband's counsel never argued to the

court, either in his written responses to wife's C.R.C.P. 60(b) motions or at the hearing, that "affirmative relief" wasn't available under C.R.C.P. 60(b), nor did counsel mention *Affordable Country Homes.* As a result, the court wasn't afforded a meaningful opportunity to correct the error that husband now alleges on appeal regarding affirmative relief being unavailable under C.R.C.P. 60(b).[1]

¶ 14    To the extent husband argues that the court's decision granting wife "affirmative relief" under C.R.C.P. 60(b) created a jurisdictional defect that he can raise at any time, we disagree. If a trial court erroneously grants a C.R.C.P. 60(b) motion that doesn't allege sufficient grounds for relief from a prior judgment, the order may be "vulnerable to reversal upon appeal" for simple "legal error," but the order isn't "void" for lack of subject matter jurisdiction. *In re Marriage of Stroud*, 631 P.2d 168, 172 (Colo. 1981) ("[I]t is not a prerequisite to the court's subject matter jurisdiction under C.R.C.P. 60(b) that the grounds asserted in the motion to set aside a judgment be legally adequate.").

---

[1] Because husband failed to preserve this issue, we express no opinion on whether the court properly invoked C.R.C.P. 60 to modify the parties' property division.

¶ 15    We similarly conclude that husband didn't preserve his due process argument. *See In re S.O.*, 795 P.2d 254, 257 (Colo. 1990) (a party's right to notice and an opportunity to be heard can be waived); *see also Zavala v. City & Cnty. of Denver*, 759 P.2d 664, 668 (Colo. 1988) ("[B]y fully participating in the hearing and failing to object to any notice provisions, the appellants waived any right to later claim these defects constituted a violation of their due process rights."). Although husband fully participated in, and was represented by counsel at, the September 2023 hearing, husband never argued to the court that he lacked notice of the different forms of relief that wife sought.

¶ 16    Even if husband had preserved his due process argument, the record reveals that husband received adequate notice that wife sought both an increased share of the proceeds from the home's sale and an award of her attorney fees. Specifically, all three of wife's C.R.C.P. 60(b) motions alerted husband that she sought both forms of relief, enabling husband to prepare defenses to both before the hearing. *See, e.g., Fueston v. City of Colorado Springs*, 713 P.2d 1323, 1326 (Colo. App. 1985) (purpose of notice component of due

process is to "convey[] enough information to allow preparation for a hearing").

¶ 17 Although wife, in her motions, framed her requests as alternative forms of relief, wife clarified at the hearing that she sought both 100% of the proceeds from the home's sale *and* attorney fees totaling $70,000. The court ultimately declined to grant wife everything she requested, awarding her 80% of the home's estimated equity and attorney fees totaling $30,212.40. Husband cites no authority, and we are aware of none, prohibiting a court from awarding a party portions of multiple alternative forms of requested relief.

### B. Equity Valuation of the Marital Home

¶ 18 Husband argues that the court erred by (1) failing to value the marital home and the parties' mortgage debt and (2) making an unsupported factual finding that the parties' equity in the marital home totaled $110,000. According to husband, the court should have used the home's May 2023 sale price of $495,000 when determining its value. We conclude that a remand is necessary for additional factual findings.

### 1. Standard of Review and Applicable Law

¶ 19    "The court has great latitude to equitably divide the marital estate based on the facts and circumstances of the case, and we won't disturb its decision absent a showing of an abuse of discretion." *In re Marriage of Medeiros*, 2023 COA 42M, ¶ 28.  A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or is based on a misapplication of the law.  *In re Marriage of Bergeson-Flanders*, 2022 COA 18, ¶ 10.

¶ 20    To achieve an equitable property division, the court must consider all relevant factors, including (a) the contribution of each spouse to the acquisition of the marital property; (b) the value of the property set apart to each spouse; (c) the economic circumstances of each spouse at the time the division of property becomes effective; and (d) any change in a spouse's separate property during the marriage or the depletion of separate property for marital purposes.  § 14-10-113(1), C.R.S. 2024; *see In re Marriage of Powell*, 220 P.3d 952, 959 (Colo. App. 2009).  Although the court has broad discretion when valuing the parties' property, it must classify the property as marital or separate, value the marital property, and equitably distribute the marital property after considering the

statutory factors. *See* § 14-10-113(1), (5); *LaFleur v. Pyfer*, 2021 CO 3, ¶ 63.

¶ 21     The same "principle[s] appl[y] to marital debt, which must be valued in the same way [that] marital property is valued." *In re Marriage of Jorgenson*, 143 P.3d 1169, 1172 (Colo. App. 2006).

¶ 22     When valuing property, the court may select the valuation of one party over that of the other party or make its own valuation. *In re Marriage of Krejci*, 2013 COA 6, ¶ 23. The court's decision valuing the property will be upheld on appeal unless clearly erroneous. *Id.* However, the court's order "must contain findings of fact and conclusions of law sufficiently explicit to give an appellate court a clear understanding of the basis of its order and to enable the appellate court to determine the grounds upon which it rendered its decision." *In re Marriage of Rozzi*, 190 P.3d 815, 822 (Colo. App. 2008).

### 2. Additional Background

¶ 23     At the November 2022 final orders hearing, husband testified that the marital home was worth approximately $505,000, while wife testified that its value fell between $505,000 and $515,000.

¶ 24    In its dissolution decree, the court estimated the remaining balance on home's mortgage at $410,000 and valued the home's equity at approximately $100,000. The court ordered that the marital home be sold and apportioned 70% of the net proceeds to wife and 30% to husband. The court also ordered the parties to follow the appointed real estate agent's recommendation if husband and wife couldn't agree "on an aspect of marketing or selling the house (e.g., listing price, whether to accept an offer)."

¶ 25    Instead of following the court's order, husband unilaterally retained his own real estate agent, Tisdale. Tisdale listed the home for sale at $474,900, well below the estimates both husband and wife gave at the November 2022 hearing. In January 2023, husband placed the home under contract for $483,900. Wife asked the court to stop the pending sale, arguing that she would lose money if it proceeded. The court, however, explained that it didn't have authority to halt the sale.

¶ 26    Wife then recorded a notice of lis pendens and filed a separate fraudulent transfer action to stop the sale. Wife eventually agreed to voluntarily dismiss the fraudulent transfer action and release the lis pendens when the parties entered into a stipulation to appoint

Hinkle as the real estate agent to list the marital home for sale. The stipulation didn't modify the court's prior order requiring the parties to either (1) reach consensus on how the home would be marketed and sold or (2) follow the appointed real estate agent's recommendations.

¶ 27    Hinkle listed the home for sale for $495,000. The same buyers who previously contracted with husband to buy the home for a lower price again tendered an offer, this time for the listing price of $495,000 but with $10,000 in seller concessions. Hinkle forwarded the offer to husband and reminded him that the parties had to reach a consensus before moving forward. Hinkle also recommended against accepting the offer "as is."

¶ 28    Despite Hinkle's recommendation, husband accepted the offer the same day. After husband accepted the offer, Hinkle emailed husband saying that she was "surprised" at husband's quick acceptance and that she had intended to reach out to other real estate agents to solicit competing offers. The sale closed in May 2023, with closing costs exceeding $60,000, including a disputed "holdover" commission going to Tisdale.

¶ 29     At the September 2023 hearing on wife's C.R.C.P. 60(b) motions, husband admitted that he had fabricated multiple invoices for work to prepare the home for sale.

¶ 30     In its ruling on wife's motions, the court determined that its original equity estimate of $100,000 had been "undermined" by husband's misconduct, including his manipulation of financial records. The court also determined that the home's sale price of $495,000 wasn't a reliable indicator of its value because (1) husband's misconduct over the life of the case delayed the sale to a less favorable market; (2) husband's sale to the "insiders" who previously attempted to purchase the home wasn't an arm's-length transaction; and (3) husband's quick acceptance of the insiders' $495,000 offer, without consulting wife, didn't reflect adequate market exposure to achieve a maximum price. However, the court didn't assign an alternative value to the home but instead estimated the parties' equity at $110,000, or $10,000 more than its prior estimate. The court then increased wife's share of the home's equity from 70% to 80% and ordered husband to make an $88,000 equalization payment to wife.

### 3. Analysis

¶ 31 At the outset, we commend the court on its extensive efforts to arrive at an equitable property division after husband's admitted misconduct came to light. The court's detailed orders reflect its diligence in attempting to reach a "just" property division under challenging circumstances. § 14-10-113(1).

¶ 32 Turning to the evidence before the court, we disagree with husband that the court abused its discretion by rejecting the home's $495,000 sale price as its value. The court found that husband's actions rendered the sale "too tainted" to give a plausible indication of the home's market value. The record supports the court's finding. Hinkle testified that, although she listed the home for sale at $495,000, she hoped that the competitive listing price would entice other buyers to make competing offers that would drive the price up. Hinkle explained that she recommended against husband accepting the first offer and that she intended to solicit competing offers from other agents who had previously expressed interest. Husband's immediate acceptance of the $495,000 offer from the "insiders," however, prevented Hinkle from seeking higher offers.

¶ 33    The court also found that husband accepted the first offer, in part, to ensure that his unauthorized real estate agent, Tisdale, would receive an "unequivocally improper commission." This finding, too, is supported by the record. Hinkle testified that husband's quick acceptance of the first offer allowed the sale to close within Tisdale's sixty-day "holdover period," thus entitling her to receive a significant commission. Given Hinkle's testimony, which the court was free to credit, and the broad discretion afforded to the court in determining an asset's value, we can't say that the court abused its discretion by finding that the $495,000 sale price was too tainted to serve as a reliable indicator of the home's value. *See In re Marriage of Mohrlang*, 85 P.3d 561, 563 (Colo. App. 2003) ("[C]redibility determinations lie within the sole discretion of the trial court."); *see also Krejci*, ¶ 23 (trial court may "make its own valuation").

¶ 34    We agree with husband, however, that the court didn't make adequate findings to support its decision regarding the value of the marital home's equity. After valuing the home's equity at $110,000, the court increased wife's apportionment from 70% to 80%, resulting in an $88,000 equalization payment owed by husband to

15

wife. But the court didn't say what evidence it relied on to reach its revised equity valuation. *See Rozzi*, 190 P.3d at 822 (court's findings must provide "a clear understanding of the basis of its order" to "enable the appellate court to determine the grounds upon which it rendered its decision"); *cf. In re Marriage of Farr*, 228 P.3d 267, 270 (Colo. App. 2010) ("some evidence in the record" must support the court's findings). Nor did the court separately determine the marital home's market value and the parties' mortgage debt in a way that would allow us to discern how it reached its equity valuation. *See Jorgenson*, 143 P.3d at 1172 (both marital property and marital debt must be valued).

¶ 35    It appears that the court may have credited wife's testimony that the home was worth $515,000 on the high side, and then subtracted the outstanding mortgage balance of $406,748.50 that appeared on the settlement statement that wife admitted into evidence. The resulting equity of $108,251.50 is remarkably close to $110,000. But we can't be certain that these calculations accurately reflect the evidence on which the court relied. Even if we could be certain, such calculations don't account for the approximate $60,000 in closing costs that also appeared on wife's

16

settlement statement.  *See In re Marriage of Burford*, 950 P.2d 682, 685 (Colo. App. 1997) (remanding for further findings where trial court's property division failed to account for husband's surrender of a $90,000 note).

¶ 36　　Accordingly, we reverse the portion of the court's order awarding wife an equalization payment and remand for further proceedings.  On remand, the court must (1) make findings separately valuing the marital home and its debt as of the earlier of the date of the decree or the date of the hearing on the disposition of property, *see* § 14-10-113(5), including any closing costs associated with the home's sale, and (2) equitably apportion the resulting equity in the marital home between husband and wife under section 14-10-113(1).  The court's findings shall explicitly state the evidence on which it relied to enable a later reviewing court to determine the grounds upon which it rendered its decision.  *See Rozzi*, 190 P.3d at 822.

¶ 37　　To the extent necessary based on its new equity determination, the court may in its discretion reconsider the overall property and debt division to achieve an equitable result.  *See In re Marriage of Vittetoe*, 2016 COA 71, ¶ 38 ("If any new division

17

impacts the fairness of the overall property and debt division, on remand, the court may revisit its entire property and debt division, but it need do so only if reconsideration is necessary to achieve an equitable result.").

## C. Attorney Fees

¶ 38 Husband also contends that the court abused its discretion by awarding wife attorney fees (1) that she incurred in her separate fraudulent transfer action; (2) under section 13-17-102, C.R.S. 2024,[2] without first finding that husband knew or should have known that his conduct lacked substantial justification; and (3) without making findings regarding the parties' relative incomes, assets, and liabilities, contrary to *In re Marriage of Aragon*, 2019 COA 76, ¶ 9. We perceive no abuse of discretion.

### 1. Standard of Review and Applicable Law

¶ 39 We review a trial court's decision awarding attorney fees for an abuse of discretion, whether they were awarded under section 13-17-102 or the court's inherent authority. *See, e.g., Laleh v.*

---

[2] We cite the current version of the statute. Although the General Assembly amended the statute after the court entered its attorney fee award in November 2023, *see* Ch. 131, § 5, 2024 Colo. Sess. Laws 466-67, those amendments don't affect our analysis.

*Johnson*, 2016 COA 4, ¶ 33; *In re Marriage of Tognoni*, 313 P.3d 655, 660-61 (Colo. App. 2011).

¶ 40 As relevant here, a court may award attorney fees under section 13-17-102(4) when it finds that a party brought or defended an action that lacked substantial justification, was interposed for delay or harassment, or unnecessarily expanded the proceeding by other improper conduct. A claim or defense lacks substantial justification when it's substantially frivolous, substantially groundless, or substantially vexatious. § 13-17-102(9)(a); *Mitchell v. Ryder*, 104 P.3d 316, 321 (Colo. App. 2004). "A vexatious claim is one brought or maintained in bad faith to annoy or harass. It may include conduct that is arbitrary, abusive, stubbornly litigious, or disrespectful of truth." *Bockar v. Patterson*, 899 P.2d 233, 235 (Colo. App. 1994).

¶ 41 Under section 13-17-102(6), before a court may impose attorney fees against an unrepresented party, the court must find that the party "clearly knew or reasonably should have known" that the party's conduct was substantially frivolous, substantially groundless, or substantially vexatious. *See Bockar*, 899 P.2d at 235.

¶ 42    A court may also award attorney fees under its inherent authority "to administer justice fairly." *Johnston v. Dist. Ct.*, 580 P.2d 798, 799 (Colo. 1978). A court may levy attorney fees, for example, to curb "abusive litigation practices," *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 765 (1980), or in response to a party's "bad faith action" that resulted in another litigant incurring unnecessary attorney fees, *Johnston*, 580 P.2d at 799.

### 2.    Additional Background

¶ 43    Based on the evidence presented at the September 2023 hearing, the court found that husband engaged in "a multi-month scheme to subvert the process created to yield a plausibly reasonable value" for the marital home. Husband's scheme, the court found, threatened to deprive wife of an equitable share of the marital estate.

¶ 44    After removing entries for time that wife's attorneys spent on wife's separate contempt motion, the court awarded wife $30,212.40 in attorney fees, citing both section 13-17-102 and its inherent authority as supporting legal authority.

### 3.    Analysis

#### a.    Attorney Fees for Fraudulent Transfer Action

¶ 45    Relying on *In re Marriage of Burns*, 717 P.2d 991 (Colo. App. 1985), husband contends that the court abused its discretion by awarding wife her attorney fees incurred in her separate fraudulent transfer action. In *Burns*, the trial court awarded the wife attorney fees under the fee-shifting provision of the Uniform Dissolution of Marriage Act (the Act) in effect at the time, § 14-10-119, C.R.S. 1985, even though wife brought the subject claim in an independent equitable action. *See id.* at 993. A division of this court reversed, explaining that the wife's fees weren't recoverable under the Act in an independent equitable action, especially as the parties' dissolution decree had never been reopened. *See id.*

¶ 46    Unlike in *Burns*, however, the court in this case awarded wife attorney fees under section 13-17-102 and its inherent authority, not under the Act. Contrary to husband's argument, the *Burns* division didn't examine whether a party's attorney fees incurred in a separate action are awardable under either section 13-17-102 or the court's inherent authority as a sanction for an opponent's litigation misconduct. As a result, *Burns* doesn't help husband.

¶ 47    While we are unaware of any authority specifically addressing whether a party's attorney fees incurred in a separate action are

21

awardable as a sanction for an opponent's litigation misconduct under section 13-17-102, we conclude that the court could award such fees under its "well-acknowledged" inherent authority to remedy "abusive litigation practices."[3] *Roadway Express*, 447 U.S. at 765 (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 632 (1962)); *accord Johnston*, 580 P.2d at 799 (upholding award of attorney fees based on court's inherent authority where the defendant's bad faith was "directly responsible" for the plaintiff's expenditure of attorney fees).

¶ 48    To the extent husband argues that the court's inherent authority to fashion appropriate sanctions for litigation misconduct doesn't extend to awarding a party its attorney fees incurred in a

---

[3] In *Roberts v. Bruce*, 2018 CO 58, the supreme court addressed the related question of whether section 13-17-102, C.R.S. 2024, authorizes a trial court to award a party its attorney fees for having to respond to a frivolous lawsuit *in another state*. Rather than restrict the trial court to awarding fees incurred only in the case before it, the supreme court held that the statute imposes a geographic limit, authorizing courts to award fees only for conduct occurring "in Colorado courts." *Id.* at ¶ 20. Thus, the supreme court's analysis appears to embrace, or at least leaves open the possibility, that a court can use section 13-17-102 to award a party attorney fees incurred in a separate Colorado lawsuit as a sanction for an opponent's litigation misconduct. We need not resolve this question, however, because we conclude that the court's inherent authority provided a sufficient basis for its fee award.

separate lawsuit, we disagree. *See Lauren Corp. v. Century Geophysical Corp.*, 953 P.2d 200, 204 (Colo. App. 1998) (discussing courts' inherent authority to award attorney fees, including when a party's wrongful act has proximately caused the wronged party to become engaged in other litigation); *see also Bernhard v. Farmers Ins. Exch.*, 915 P.2d 1285, 1287 n.3 (Colo. 1996) (collecting cases illustrating the same).

### b. Section 13-17-102(6)

¶ 49    We also disagree with husband that the court abused its discretion by awarding wife attorney fees under section 13-17-102 without first finding under subsection 102(6) that husband, while proceeding pro se, knew or reasonably should have known that his conduct was substantially frivolous, substantially groundless, or substantially vexatious.[4]

¶ 50    The court found both that (1) husband's conduct was substantially vexatious and unnecessarily expanded the

---

[4] Although husband was represented by an attorney at both the November 2022 and September 2023 hearings, the court found that husband wasn't represented by counsel during the "bulk" of the case. Based on this finding, we will assume without deciding that section 13-17-102(6) applies to husband.

proceedings and (2) husband acted knowingly and willfully when he violated the court's orders. The court's findings, which enjoy record support, satisfy the requirements for an attorney fee award under subsection 102(6). *See Bockar*, 899 P.2d at 235.

### c. *In re Marriage of Aragon*

¶ 51    Finally, we aren't persuaded by husband's argument that the court ran afoul of *Marriage of Aragon*, ¶ 9, by failing to make findings regarding the parties' relative incomes, assets, and liabilities. *Aragon*'s requirement that the court make findings regarding the parties' relative incomes, assets, and liabilities applies when the court awards attorney fees under section 14-10-119. *See Aragon*, ¶¶ 8-9. But as already discussed, the court in this case didn't award wife attorney fees under section 14-10-119.

¶ 52    Husband also argues that (1) wife didn't substantiate her request for attorney fees with an affidavit and (2) wife should have pursued her attorney fees through a contempt proceeding under C.R.C.P. 107. But husband fails to cite the point in the record where he preserved these arguments. *See* C.A.R. 28(a)(7)(A). We therefore decline to address them. *See Shiplet v. Colo. Dep't of Revenue*, 266 P.3d 408, 412 (Colo. App. 2011).

## III. Disposition

¶ 53 We affirm the judgment in part and reverse it in part, and we remand the case for further proceedings consistent with this opinion.

JUDGE J. JONES and JUDGE LIPINSKY concur.