**In re the MARRIAGE OF Kathryn M. ROZZI, n/k/a Kathryn M. Mraz, Appellant,**

and

**James E. Rozzi, Appellee.**

**No. 07CA0467.**

Colorado Court of Appeals, Div. III.

June 12, 2008.

Kaplan Law, L.L.C., Marc J. Kaplan, Julia M. Purchase, Denver, Colorado, for Appellant.

Beltz, Edwards, Sabo & West, LLP, Daniel A. West, Colorado Springs, Colorado, for Appellee.

Opinion by Judge LOEB.

In this post-dissolution of marriage proceeding, Kathryn M. Rozzi, now known as Kathryn M. Mraz (mother), appeals from orders regarding the allocation of parental responsibilities and the appointment of a parenting coordinator, and from the denial of her motion for destruction of a letter written by a former special advocate and an injunction against further use of that letter. We affirm in part, vacate in part, and remand for further proceedings.

Mother and James E. Rozzi (father) are the parents of one child. In November 2003, in anticipation of the dissolution of their marriage, the parties entered into a parenting plan intended to govern their rights until the child, then two years old, reached the age of five. The court found that the parties' plan was in the best interests of the child and adopted it as the order of the court.

The parenting plan provided that Ms. Rooks, the special advocate appointed for the child, should assist the parents to resolve disputes concerning parenting time. For this purpose, Ms. Rooks was granted arbitration powers pursuant to section 14–10–128.5, C.R.S.2007, and the parties agreed that if mediation failed to resolve a disagreement regarding parenting time, Ms. Rooks would resolve the issue in a written decision. The agreement further provided that either party could seek de novo judicial review if dissatisfied with a decision made by Ms. Rooks.

Mother soon became dissatisfied with the services provided by Ms. Rooks, and in June 2004, she filed the first of a series of motions requesting that the court terminate Ms. Rooks's services and overturn her decisions.

In April 2006, the court issued an order resolving a number of parenting time issues. In addition, the court terminated the services of Ms. Rooks and ordered that mother should choose which of two candidates should be appointed as a child and family investigator (CFI) to assist the court in determining a permanent parenting plan when the child reached the age of five.

In his August 2006 report and in his testimony at the December 2006 hearing on parenting issues, the CFI concluded that mother and father still had the potential to learn to co-parent effectively despite their frequent conflict, and that it was in the child's best interests to have both of them involved in decision-making. To assist the parties in joint decision-making, he recommended that the court appoint a parenting coordinator with an arbitrator's power to render swift, binding decisions on parenting issues.

Following the December 2006 hearing, the court issued a preliminary order regarding parenting time and the allocation of decision-making responsibilities. Mother objected to the entry of this order and requested that the court reconsider certain of its provisions, including, as relevant here, the provisions regarding the appointment of a parenting coordinator. The court modified the order by deleting the provision that all decisions by the parenting coordinator would be binding and substituting a provision stating that pending a court hearing on the matter, no recommendation of the parenting coordinator would be binding unless the parties agreed in writing that it should be. With the exception of that modification, the court denied the motion for reconsideration. The order, as modified, was entered on February 26, 2007.

Mother now appeals from the February 26, 2007, order and from a subsequent order denying her motion to destroy and enjoin further use of a letter written by Ms. Rooks.

## I.

Mother contends the trial court erred by appointing a parenting coordinator with special master powers. We agree in part.

## A.

Mother argues that the trial court erred by appointing a parenting coordinator despite evidence of physical and psychological abuse. She maintains that under section 13–22–313, C.R.S.2007, the court could not refer the parties to any form of alternative dispute resolution because she claimed that she had been the victim of physical or psychological abuse by father. We do not agree.

Under section 13–22–313(1), C.R.S.2007, a court may not refer a case "to any ancillary form of alternative dispute resolution" if one of the parties claims that he or she has been the victim of physical or psychological abuse by the other party and the allegedly abused party states that he or she is unwilling to enter into ancillary forms of dispute resolution. As identified in section 13–22–313(1), ancillary forms of alternative dispute resolution include "arbitration, early neutral evaluation, med-arb, mini-trial, multi-door courthouse concepts, settlement conference, special master, summary jury trial, or any other form of alternative dispute resolution which the court deems to be an effective method for resolving the dispute in question." Although section 13–22–313(1) does not specifically refer to parenting coordinators, we note that the Office of Dispute Resolution lists "parenting coordination" as one of the services that it provides. *See* Office of Dispute Resolution, Program Services, http://www.courts.state.co.us/chs/court/mediation/services.htm (last visited Apr. 30, 2008).

Under section 14–10–128.1(1), C.R.S.2007, the court may, on its own motion, a motion by either party, or an agreement of the parties, appoint a parenting coordinator as a neutral third party to assist in the resolution of the parties' disputes concerning parental responsibilities. If the parties do not agree to the appointment of a parenting coordinator, the court must make findings in support of the appointment as set forth in section 14–

10–128.1(2)(a), and, if the record includes documented evidence of domestic violence, the court must consider its effect on the parties' ability to engage in parenting coordination as set forth in section 14–10–128.1(2)(b).

For purposes of our analysis, we assume without deciding that "parenting coordination" is an ancillary form of alternative dispute resolution under section 13–22–313(1). Thus, the issue before us is whether the court should apply that statute or section 14–10–128.1(1) in deciding whether to appoint a parenting coordinator. We conclude that section 14–10–128.1(1) is applicable here.

■ When construing statutes, an appellate court should give effect to each word and construe each provision in harmony with the overall statutory design, whenever possible. If different statutory provisions conflict or cannot be harmonized, the specific provision controls over the general provision. *Telluride Resort & Spa, L.P. v. Colo. Dep't of Revenue*, 40 P.3d 1260, 1265 (Colo.2002); *see* § 2–4–205, C.R.S.2007. Further, when two statutes are irreconcilable, the General Assembly has directed us to apply the more recent statute. *See* § 2–4–206, C.R.S.2007; *City of Florence v. Pepper,* 145 P.3d 654, 657 (Colo.2006).

Here, we conclude that, with respect to the standards for the appointment of a parenting coordinator, sections 13–22–313 and 14–10–128.1 are in conflict and cannot be harmonized.

Because section 13–22–313 applies generally to judicial referral to any form of alternative dispute resolution, while section 14–10–128.1 applies specifically to the appointment of an individual to assist parties in resolving disputes concerning parental responsibilities, we further conclude that, in this case, section 14–10–128.1, as the more specific provision, is the controlling statute. *See* § 2–4–205; *Telluride Resort & Spa,* 40 P.3d at 1265.

Further, section 13–22–313 was enacted effective on June 2, 1992, whereas the more specific section 14–10–128.1 was not enacted until June 2, 2005. Thus, section 14–10–128.1 is also controlling here as the more recently enacted statute. *See* § 2–4–206; *Pepper,* 145 P.3d at 657.

■ Under section 14–10–128.1(2)(b), a claim by one parent that he or she was subject to abuse by the other parent is not sufficient to bar the appointment of a parenting coordinator. Even documented evidence of domestic violence does not automatically bar such an appointment; rather, the court is required only to consider the effect of the evidence on the parties' ability to engage in parenting coordination.

Here, mother claimed that she had been the victim of domestic violence during the marriage. However, father denied it, and the CFI stated that he was unable to make a determination, based on the evidence available to him, that domestic violence had occurred.

Because section 13–22–313 is not the controlling statute here, we reject mother's contention that evidence of a claim of abuse alone was sufficient to deny the court the authority to appoint a parenting coordinator. Further, because mother limits her contention on appeal to the applicability of section 13–22–313, and does not contend there was "documented evidence of domestic violence" in the record beyond her claim of abuse, we need not address whether the court properly considered any such evidence and made sufficient findings under section 14–10–128.1(2)(b).

B.

Mother argues that the trial court erred by appointing a parenting coordinator without making the findings required by section 14–10–128.1(2)(a). In the alternative, she argues that the court abused its discretion by finding that the requirements for appointment of a parenting coordinator without the consent of the parties had been met. We disagree.

If the parties do not agree to the appointment of a parenting coordinator, the court must make the following findings before making the appointment:

(I) That the parties have failed to adequately implement the parenting plan;

(II) That mediation has been determined by the court to be inappropriate, or, if not inappropriate, that mediation has been attempted and was unsuccessful; and

(III) That the appointment of a parenting coordinator is in the best interests of the child or children involved in the parenting plan.

§ 14–10–128.1(2)(a).

Here, the court found that "[t]he requirements of [section] 14–10–128.1(2)(a) are met." In our view, this finding was sufficient to indicate that the court considered the three factors set forth in subsections (I), (II), and (III) and found that the evidence presented at trial satisfied each of those factors. Further, we disagree with mother's contention that the record does not support that finding.

■ Mother argues that the court could not properly have found that she had failed to adequately implement the parenting plan because no evidence supported such a finding. However, mother herself testified that she and father had repeatedly disagreed about parenting time. Her testimony, and a chart that she prepared to document parenting time conflicts, demonstrated that the parties often disagreed with respect to how the provisions of the parenting plan should be construed or applied. We conclude that evidence of repeated disagreements regarding the implementation of the parenting plan is sufficient to support a finding that the parties had failed to "adequately implement" the plan.

■ Mother argues that the court could not have found that mediation had been tried and found unsuccessful because it had not been tried, and that although the court might have determined that mediation was inappropriate, the court failed to state any basis for such a finding. We note that mother repeatedly stated during trial that she did not believe that a decision-maker should be appointed, that she feared that a decision-maker would be manipulated by father, and that she believed that she should be given sole decision-making responsibility because she and father could not co-parent and she was unwilling to rely on a third party to resolve their disputes. In her motion for reconsideration, she stated that she "adamantly disagree[d]" with "any type of mediation or arbitration." Given mother's unequivocal opposition to mediation and all other forms of third-party involvement in decision-making, the trial court reasonably could find that mediation was inappropriate for this case.

■ Mother also argues that the court could not reasonably have found that appointment of a parenting coordinator was in the child's best interests in light of her belief that a parenting coordinator would be "manipulated" by father just as the special advocate had been manipulated by him. However, the CFI strongly recommended the appointment of a parenting coordinator to assist mother and father in resolving disputes that they could not resolve themselves. His testimony supports the finding that it was in the child's best interest to appoint a parenting coordinator.

Accordingly, because there is ample record support for the trial court's finding that the requirements of section 14–10–128.1(2)(a) were met, we will not disturb that finding on appeal. *See In re Marriage of Van Inwegen,* 757 P.2d 1118, 1121 (Colo.App.1988) (the trial court's order must contain findings of fact and conclusions of law sufficient to give an appellate court a clear understanding of the basis of its order and to enable the appellate court to determine the grounds upon which it reached its decision); *see also Manor Vail Condo. Ass'n v. Town of Vail,* 199 Colo. 62, 68, 604 P.2d 1168, 1172 (1980) (trial court judgment is sufficient if the ultimate facts have been determined and conclusions of law are entered thereon).

C.

Mother argues and father concedes that the trial court improperly appointed the parenting coordinator to a term of forty-eight months. We agree that the term of appointment should have been limited to two years, as provided by section 14–10–128.1(5), C.R.S. 2007. On remand, the court should modify the term as required to bring it within the statutory limit.

### D.

Mother argues, father concedes, and we agree that the trial court erred in assigning the duties of a special master to the parenting coordinator.

Under C.R.C.P. 53, the court may appoint a master to assist the court as set forth in the order of reference. As set forth in C.R.C.P. 53(e)(1), the master must prepare a report upon the matters submitted to the master by the order of reference. In a non-jury action, the court must accept the master's findings of fact unless they are clearly erroneous. However, any party may object to the master's report, and the court, after hearing, may adopt the report, modify it, reject it in whole or in part, receive further evidence, or recommit the matter to the master with instructions. C.R.C.P. 53(e)(2).

Here, the court ordered the parties first to attempt to resolve disputes between themselves. The order provided that if they could not do so, either party could request assistance from the parenting coordinator, who was authorized to "issue decisions subject to the requirements of C.R.C.P. 53." Either party, if dissatisfied, could then lodge an objection as provided by C.R.C.P. 53(e)(2) and notify the court so that a forthwith hearing could be scheduled. Pending the hearing, no recommendation of the parenting coordinator was to be binding absent written agreement of the parties.

■ Because we have concluded that section 14–10–128.1 is the applicable statute here, we agree with the parties that the court erred in attempting to combine the roles of parenting coordinator and special master and giving the parenting coordinator a decision-making role under C.R.C.P. 53.

■ We also agree that the court could not assign decision-making duties to the parenting coordinator under section 14–10–128.1. See In re Marriage of Dauwe, 148 P.3d 282, 285 (Colo.App.2006)(a parenting coordinator may help the parties resolve their differences, but may not make decisions for them or resolve disputes that the parties are unable to resolve).

■ However, the record shows that, although the court originally proposed to allow the parenting coordinator to make decisions that would be binding on the parties, the court deleted that provision in the final order and substituted a provision stating that the parenting coordinator's "recommendation" would not be binding absent written agreement of the parties. Mother has identified no authority for the proposition that it is improper for a parenting coordinator to make nonbinding recommendations for the resolution of parenting time disputes. We are persuaded that it was proper for the court to assign the parenting coordinator the duty to make such recommendations. Under section 14–10–128.1(3), C.R.S.2007, "[a] parenting coordinator shall assist the parties in implementing the terms of the parenting plan."

■ By recommending possible solutions to the parties when they encounter difficulty in implementing the parenting plan, the parenting coordinator can help the parties not only to resolve the immediate problem, but also to develop guidelines and strategies that will allow them to avoid similar problems in the future. This role is consistent with the legislative intent that a parenting coordinator should assist the parties in implementing the terms of the parenting plan.

We conclude that although the court erred in directing that the parenting coordinator should assume the duties of a special master and follow the procedures set forth in C.R.C.P. 53, the court did not err in providing that the parenting coordinator may make nonbinding recommendations to the parties in the event that they are unable to resolve a dispute themselves. On remand, the court shall amend its order accordingly.

### II.

■ Mother contends that the trial court failed to make findings sufficient to support its decision to order joint decision-making. We agree that additional findings are needed.

When initially allocating decision-making responsibility between parents, the court must consider a number of factors, including,

as relevant here, "the ability of the parties to cooperate and to make decisions jointly." § 14–10–124(1.5)(b)(I), C.R.S.2007.

If a parent subsequently requests a modification of decision-making responsibility under section 14–10–131(2), C.R.S.2007, he or she must demonstrate that, based upon facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, a change has occurred in the circumstances of the child, the child's custodian, or the party to whom decision-making responsibility was allocated and that the modification is necessary to serve the best interests of the child. If the party seeking a modification of decision-making responsibility makes the necessary showing, the court must nevertheless retain the existing allocation of decision-making responsibility unless one of the circumstances set forth in subsections (a) through (c) is shown to exist.

▪ A trial court's order must contain findings of fact and conclusions of law sufficiently explicit to give an appellate court a clear understanding of the basis of its order and to enable the appellate court to determine the grounds upon which it rendered its decision. *Van Inwegen*, 757 P.2d at 1121.

Here, the trial court determined that the parties should have joint decision-making responsibility with respect to all major decisions and that each should have the right to make day-to-day decisions for the child during his or her own parenting time. However, the court did not make specific findings of fact regarding the parties' ability to make joint decisions or other factors that the court may have considered in determining that decision-making should be joint. Rather, the court found generally that all of the provisions of the order were in the best interests of the child "[b]ased upon the evidence and testimony presented at the hearing held on December 16, 2006."

The parties disagree as to whether the trial court should have decided this issue under section 14–10–124(1.5)(b), C.R.S.2007, or under the more rigorous standard set forth in section 14–10–131(2). Mother argues that because the initial parenting plan was intended to serve only until the child

reached the age of five, the court was required to apply section 14–10–124, C.R.S. 2007, to determine the allocation of parental responsibilities for the purpose of establishing a new parenting plan. Father contends that once parental responsibilities were allocated in the initial parenting plan, any request to change or modify the allocation triggered the application of section 14–10–131, C.R.S.2007. The trial court did not indicate which standard it applied in concluding that the parties should have joint decision-making responsibility.

In the absence of more specific findings by the trial court, including findings as to the nature of the parties' initial parenting plan, we are unable to determine the basis for the court's decision. Thus, we are unable to determine whether the court applied the proper legal standards. Accordingly, on remand the court should make additional, specific findings sufficient to give this court a clear understanding of the basis of its order.

## III.

▪ Mother contends, father concedes, and we agree that the trial court abused its discretion and exceeded its statutory authority by ordering that neither party may relocate without permission from the other party or the court. We agree that the order, as written, is overly broad and inconsistent with section 14–10–129, C.R.S.2007. Accordingly, on remand the court should clarify that any relocation requiring permission of the court should be considered pursuant to section 14–10–129, to the extent the relocation "substantially changes the geographic ties between the child and the other party." *See* § 14–10–129(1)(a)(II), C.R.S.2007.

## IV.

▪ Mother contends that the trial court erred by denying her motion for an order requiring the destruction of an allegedly "improper" letter written by Ms. Rooks and enjoining further use of the letter. She argues that the court should have exercised its authority under C.R.C.P. 65(h) to enter such an order. We disagree.

In May 2005, Ms. Rooks wrote a letter to be submitted to father's military superiors in support of father's request for compassionate reassignment from Iraq to a military post in the United States.

In March 2007, mother filed a motion to "destroy [the letter] and enjoin [father] from further use [of it]." She alleged that Ms. Rooks had violated her duties as a mediator, and thus, violated section 13–22–307, C.R.S. 2007, by disclosing confidential information about her and the child.

In an order dated April 30, 2007, the court denied mother's motion and ordered that the letter should "be maintained, sealed, in the court file." The record reflects that, on July 16, 2007, the court entered a further minute order confirming that mother's motion was denied "with the qualification that no use of or reference to [the] letter is to be make [sic] by either party or anyone on his/her behalf or by [Ms.] Rooks without prior court order."

C.R.C.P. 65 sets forth the circumstances in which injunctive relief may be granted, and describes the procedures to be followed with respect to such relief. C.R.C.P. 65(h) provides: "This Rule shall not apply to suits for dissolution of marriage, legal separation, maintenance, child support, or custody of minors. In such suits, the court may make prohibitive or mandatory orders, without notice or bond, as may be just."

[16] Thus, C.R.C.P. 65(h) recognizes that some forms of special mandatory or prohibitive relief are available in dissolution proceedings, and that in determining whether to grant such relief, the court is not required to follow the procedures or apply the standards set forth in C.R.C.P. 65. *See, e.g.*, § 14–10–108(2)(a)–(c), C.R.S.2007 (providing for the issuance of temporary orders restraining a party from disposing of property except in the usual course of business or for the necessities of life; enjoining a party from molesting or disturbing the peace of the other party or of any child; and excluding a party from the family home or from the home of the other party upon a showing that physical or other harm would otherwise result).

Here, the court considered mother's motion and father's response and denied the motion, with the qualifications that the letter be maintained and sealed in the court file and that no reference to or use of the letter could be made without prior court order. We perceive this ruling to be an appropriate exercise of the court's discretion, and, accordingly, we conclude that the trial court did not err in denying mother's motion.

The February 26, 2007, order relating to the allocation of parental responsibilities is vacated to the extent it appoints the parenting coordinator to a term of forty-eight months; provides, without qualification, that neither party may relocate without permission from the other party or the court; and grants decision-making authority to the parenting coordinator, provides that the parenting coordinator is appointed pursuant to C.R.C.P. 53, or provides that the parenting coordinator is subject to the requirements of C.R.C.P. 53. The case is remanded to the trial court to modify the term of appointment of the parenting coordinator to comply with the two-year limit set forth in section 14–10–128.1(5); identify more specifically the circumstances, pursuant to section 14–10–129, under which the primary residential parent must obtain permission of the other party or the court before relocating with the child; and clarify that the parenting coordinator may make recommendations to the parties to assist them in resolving disputes, but may not make decisions for them. The court should also make further findings and conclusions as needed to articulate the basis for its decision that the parties should continue to have joint decision-making responsibility. The February 26, 2007, order is affirmed in all other respects. The April 30, 2007, order denying mother's motion for injunctive relief is affirmed as well.

Judge HAWTHORNE concurs.

Judge TAUBMAN concurs in part and dissents in part.

Judge TAUBMAN concurring in part and dissenting in part.

Although I concur with most of the majority's opinion, I write separately to dissent from Part I.B. Specifically, I believe the trial court erred in appointing a parenting coordi-

nator without making the findings required by section 14–10–128.1(2)(a), C.R.S.2007. Accordingly, I believe this part of the court's order should be reversed.

Here, before the decree of dissolution was entered, the parties entered into a parenting plan, which provided in part for the appointment of a special advocate to assist the parents in resolving parenting time disputes. If the parties' mediation with the special advocate failed to resolve a disagreement, the special advocate had decision-making power.

Mother soon became frustrated with the special advocate and moved to terminate her services and overturn her decisions. Accordingly, the trial court terminated the services of the special advocate.

Subsequently, a child and family investigator (CFI) was appointed to make recommendations to the court. The CFI recommended that a parenting coordinator be appointed with decision-making power. Mother objected. Although the trial court ultimately decided to appoint a parenting coordinator, the parenting coordinator was not give decision-making power. Mother appealed, inter alia, the trial court's decision appointing a parenting coordinator.

A parenting coordinator is a neutral third party appointed in contentious post-decree dissolution cases to assist the parties in resolving disputes concerning parental responsibilities. *See* § 14–10–128.1(1), C.R.S.2007. Either the parties may agree to the appointment of a parenting coordinator or, if the parties do not agree, a trial court may appoint a parenting coordinator after making three specific findings. *See* § 14–10–128.1(2), C.R.S.2007. Specifically,

> Absent agreement of the parties, a court shall not appoint a parenting coordinator unless the court makes the following *findings:*
>
> (I) That the parties have failed to adequately implement the parenting plan;
>
> (II) That mediation has been determined by the court to be inappropriate, or, if not inappropriate, that mediation has been attempted and was unsuccessful; and
>
> (III) That the appointment of a parenting coordinator is in the best interests of the

child or children involved in the parenting plan.

§ 14–10–128.1(2)(a) (emphasis added).

Here, the trial court did not make specific findings of fact with respect to each consideration. Instead, the court merely found that "[t]he requirements of [section] 14–10–128.1(2)(a) are met."

The majority concludes that the trial court's determination sufficiently indicated that it considered the three statutory factors and was persuaded the evidence presented at the hearing satisfied each factor. The majority further concludes that the record supports the trial court's determination. I respectfully disagree.

When we interpret a statute, our goal is to give effect to the intent of the General Assembly. *Zab, Inc. v. Berenergy Corp.*, 136 P.3d 252, 255 (Colo.2006). Well-established principles of statutory construction dictate that we must first examine the plain language of the statute. *Snyder Oil Co. v. Embree*, 862 P.2d 259, 262 (Colo.1993). Where the statutory language is clear and unambiguous, we need not resort to interpretive rules of statutory construction. *Id.* However, if "the statutory language lends itself to alternative constructions and its intended scope is ambiguous or unclear, we then look to legislative history, prior law, the consequences of a given construction, and the goal of the statutory scheme." *Sperry v. Field*, 186 P.3d 133, 137 (Colo.App.2008).

Section 14–10–128.1(2)(a) uses the term "findings" without explaining what type of findings should be made. I believe the term "findings" as used in the parenting coordinator statute is ambiguous because it is susceptible of two meanings. First, "findings" could mean findings of fact. Alternatively, "findings" could mean conclusions of law. Indeed, the General Assembly frequently uses the term "findings" without specifying which type of findings should be made. *See, e.g.,* § 13–17–102(6), C.R.S.2007 ("No party who is appearing without an attorney shall be assessed attorney fees unless the court *finds* that the party clearly knew or reasonably should have known that his action or defense ... was substantially frivolous, sub-

stantially groundless, or substantially vexatious ...." (emphasis added)); § 13–23–104(1), C.R.S.2007 (structured settlement must be based on "express findings" by court or administrative authority on three factors, two of which concern questions of law and one of which requires a finding of fact).

Contrary to the majority's conclusion that a trial court may conclude as a matter of law that the criteria set forth in section 14–10–128.1(2)(a) have been satisfied without making factual findings, I believe section 14–10–128.1(2)(a) requires a trial court to make specific findings of fact with respect to each criterion and, based upon those factual findings, then determine as a matter of law whether a parenting coordinator should be appointed.

The legislative history for section 14–10–128.1 supports my conclusion because it suggests that the General Assembly intended that a trial court make specific factual findings before concluding that a parenting coordinator should be appointed. Statements made before a legislative committee, while less persuasive than a statement of a legislator during a debate, provide guidance in interpreting a statute by helping to illustrate the understanding of legislators. *People v. Rockwell*, 125 P.3d 410, 419 (Colo.2005).

During the House Judiciary Committee's hearings, a representative from the Family Law Section of the Colorado Bar Association, Beth Hensun, explained, "[I]f the court decides to appoint one[,] the court must make several *findings of fact* on the record in order to appoint a parenting coordinator including a finding that the parties have been unable to implement their parenting plan that is already in place." Hearings on H.B. 1171 before the H. Judiciary Comm., 65th Gen. Assemb., 1st Sess. (Feb. 24, 2005) (emphasis added).

Furthermore, many witnesses at both the House and Senate Judiciary Committees' hearings, including the bill's sponsor, Representative Jahn, discussed the need to establish statutory authority for the appointment of parenting coordinators. Prior to the enactment of section 14–10–128.1, trial courts had been appointing parenting coordinators in contentious cases. *See id.; see also* Hearings on H.B. 1171 before the S. Judiciary Comm., 65th Gen. Assemb., 1st Sess. (Mar. 16, 2005). The witnesses also explained that, although trial courts statewide had been appointing parenting coordinators for some time, the authority and duties given to them varied significantly.

Consequently, the legislative history demonstrates that the General Assembly, in passing the bill, intended to (a) provide statutory authority for the appointment of parenting coordinators and (b) ensure consistency in appointments when the parties disagreed by requiring trial courts to make specific factual findings capable of appellate review. If the General Assembly intended only to provide legislative authority to appoint parenting coordinators, it would not have included the criteria set forth in subsection (2)(a).

Moreover, I believe the General Assembly's intent to ensure consistency in appointments by requiring trial courts to make specific factual findings is evident from the circumstances of this case. Here, mother strongly opposed the appointment of a parenting coordinator, and the evidence presented at trial did not compel the conclusion that a parenting coordinator was necessary.

With respect to the first criterion, which requires a finding "[t]hat the parties have failed to adequately implement the parenting plan," § 14–10–128.1(2)(a)(I), mother contends that no evidence was presented to establish that she and father had failed to adequately implement the parenting plan. She notes in particular that father did not even make allegations to that effect. The majority relies on mother's testimony that she and father repeatedly disagreed about parenting time. However, parties to dissolution of marriage proceedings frequently disagree about parenting time, and disagreements in and of themselves do not necessarily mean that the parties failed to adequately implement a parenting plan. Indeed, it seems that the parties' disagreements here had more to do with the special advocate than with the parenting plan itself.

With respect to the second criterion, subsection (II) requires a finding "[t]hat media-

tion has been determined by the court to be inappropriate, or, if not inappropriate, that mediation has been attempted and was unsuccessful." § 14–10–128.1(2)(a)(II). Mother contends that the parties had not attempted mediation in the past, and the court provided no basis for its implied finding that mediation was inappropriate.

To support its conclusion that the evidence in the record supports a finding that the mediation subsection was satisfied, the majority relies on mother's unequivocal opposition to any form of alternative dispute resolution and all forms of third-party decision-making. However, given her belief that the previously appointed special advocate was partial to father, mother's resistance to the involvement of another third party is understandable. Additionally, the record indicates that mother's reluctance to accept third-party involvement focused on allowing a third party to have decision-making power. Based on this evidence, the trial court could have concluded that mediation was appropriate, especially given the fact that mediators do not have decision-making power.

With respect to the last criterion, mother contends that the appointment of a parenting coordinator was not in the best interests of the child because the previous third party involved—the special advocate—had damaged the parties' relationship. *See* § 14–10–128.1(2)(a)(III). Here, the special advocate strained the parties' relationship when she went from being a neutral third party to advocating for father by writing a letter on his behalf.

In short, without a trial court making factual findings on the record with respect to each criterion, we are left to speculate as to the basis for the trial court's decision. Such speculation is inconsistent with the General Assembly's intent that a court shall *not* appoint a parenting coordinator unless it makes three specified findings.

Finally, the trial court's decision to appoint a parenting coordinator is inextricably intertwined with its concededly improper assignment of special master authority to the parenting coordinator. Had the trial court considered whether a parenting coordinator without such authority would be appropriate,

it might have declined to appoint a parenting coordinator. Nor did either party request that a decision-maker be appointed pursuant to section 14–10–128.3, C.R.S.2007.

Accordingly, I dissent from the majority's opinion in Part I.B and would reverse the trial court's appointment of a parenting coordinator.