2012 COA 69

**In re the MARRIAGE OF Blake A. LEVERETT, Appellant,**

and

**Sarah M. Leverett, Appellee.**

**No. 10CA1338.**

Colorado Court of Appeals, Div. V.

April 26, 2012.

Beltz & West, P.C., Daniel A. West, Colorado Springs, Colorado, for Appellant.

Weeks & Luchetta, LLP, Michael L. Luchetta, Eileen Donnelly, Colorado Springs, Colorado, for Appellee.

Opinion by Judge FURMAN.

¶ 1 In this post-dissolution of marriage contempt matter between Blake A. Leverett (husband) and Sarah M. Leverett (wife), husband appeals from the district court's order denying his petition for review of a district court magistrate's judgment. The magistrate found husband in contempt and imposed punitive sanctions against him for violating the awards of an arbitrator. Wife had

not asked the district court to confirm the arbitrator's awards pursuant to section 13–22–222(1), C.R.S.2011 (detailing a proceeding by which a district court issues an order confirming an arbitrator's award).

¶ 2 This appeal presents an issue of first impression in Colorado: is the award of an arbitrator appointed under section 14–10–128.5, C.R.S.2011, which has not been confirmed by the district court, enforceable as a "court order" under Colorado's contempt rule? We hold the answer to this question is no. We therefore vacate the district court's order and remand the case with directions.

### I. The Arbitrator's Awards

¶ 3 After a hearing, the district court dissolved the parties' marriage on October 14, 2008. (The court signed the written decree of dissolution on March 18, 2009, effective nunc pro tunc to the hearing date.) As part of the decree of dissolution, and with the consent of both parties, the court appointed an arbitrator pursuant to section 14–10–128.5, whose authority to arbitrate the case became effective on October 14, 2008. The arbitration agreement entered into by the parties stated: "The parties understand that this process is an alternative to having their case heard in court by a judge."

¶ 4 The arbitrator entered an interim award on January 22, 2009, and a final award on February 27, 2009; the final award was first emailed to the parties and later sent with the arbitrator's signature. In both awards, husband was ordered to take two of his children to a particular therapist for family therapy. Husband, however, opposed the arbitrator's chosen therapist, as the arbitrator noted in her final award:

I am also waiting for the therapy with [the therapist] to begin which [husband] and [his then girlfriend] are still opposing. They have sent me several lengthy emails and I do not have time to answer them in detail this week, but I am still ordering that the girls begin therapy (even if appts are initially during school hours) as soon as possible.

The arbitrator also stated in her final award, "If either of you can do whatever is neces-

sary to file this [award] with the Court ... I would appreciate it." Neither spouse petitioned the district court to confirm either of the awards.

¶ 5 Husband took the children to a therapist other than the one selected by the arbitrator. In response, wife filed a motion for contempt citation with the district court magistrate, citing as grounds the two awards, attaching them as exhibits to her motion, and calling them "certain Orders of this Court"—even though the district court had not confirmed them.

¶ 6 The magistrate eventually held a contempt hearing, at which she found husband guilty of indirect contempt for violating the arbitrator's awards. Four months later, the magistrate held a sentencing hearing, at which she imposed punitive sanctions on husband—two weeks in jail and a $2000 fine. After serving his sentence, husband timely petitioned the district court for review of the magistrate's decision. In a written order, the court denied husband's petition.

¶ 7 On appeal of the district court's order, husband contends that the district court magistrate erred in finding him in contempt of court for alleged violations of unconfirmed arbitration awards.

¶ 8 Separately, wife requests her costs and attorney fees on appeal.

## II. Contempt Based on an Arbitrator's Award

¶ 9 We first consider whether the district court magistrate erred in finding husband in contempt of court for alleged violations of unconfirmed arbitration awards. We conclude she did.

¶ 10 C.R.C.P. 107 defines the actions constituting contempt to include "disobedience ... by any person to ... any lawful ... order of the court." C.R.C.P. 107(a)(1); *see In re Marriage of Cyr*, 186 P.3d 88, 91 (Colo.App.2008). Thus, to find a party in contempt the fact finder must find that the contemnor did not comply with a lawful order of the "court." *See Cyr*, 186 P.3d at 91.

¶ 11 C.R.C.P. 107 defines "court" as "any judge, magistrate, commissioner, referee, or a master while performing official duties."

C.R.C.P. 107(a)(6). Because an arbitrator is not included in this definition, and an arbitrator's award is not an order of the court, a person cannot be held in contempt of court for violating an unconfirmed award of an arbitrator.

¶ 12 Nevertheless, wife contends that an arbitrator's "award" entered pursuant to section 14–10–128.5 and without confirmation by the district court under section 13–22–222(1) constitutes an "order" for purposes of contempt under C.R.C.P. 107(a)(1). To address wife's contention, we are required to interpret sections 14–10–128.5 and 13–22–222(1).

¶ 13 Section 14–10–128.5 of the Uniform Dissolution of Marriage Act (UDMA) provides:

(1) With the consent of all parties, the court may appoint an arbitrator to resolve disputes between the parties concerning the parties' minor or dependent children, including but not limited to parenting time, nonrecurring adjustments to child support, and disputed parental decisions. Notwithstanding any other provision of law to the contrary, all awards entered by an arbitrator appointed pursuant to this section shall be in writing. The arbitrator's award shall be effective immediately upon entry and shall continue in effect until vacated by the arbitrator pursuant to part 2 of article 22 of title 13, C.R.S. [2011], modified or corrected by the arbitrator pursuant to part 2 of article 22 of title 13, C.R.S. [2011], or modified by the court pursuant to a de novo hearing under subsection (2) of this section.

(2) Any party may apply to have the arbitrator's award vacated, modified, or corrected pursuant to part 2 of article 22 of title 13, C.R.S. [2011], or may move the court to modify the arbitrator's award pursuant to a de novo hearing concerning such award by filing a motion for hearing no later than thirty days after the date of the award. In circumstances in which a party moves for a de novo hearing by the court, if the court, in its discretion based on the pleadings filed, grants the motion and the court substantially upholds the decision of the arbitrator, the party that requested

the de novo hearing shall be ordered to pay the fees and costs of the other party and the fees of the arbitrator incurred in responding to the application or motion unless the court finds that it would be manifestly unjust.

¶ 14 In construing a statute and determining legislative intent, we rely on the language of the statute and give the words used their plain and ordinary meaning. § 2–4–101, C.R.S.2011; *see Aragon v. Dep't of Corr.,* 140 P.3d 278, 280 (Colo.App.2006). When statutory language is clear and unambiguous, we must construe the statute as written. *In re Marriage of Schmedeman,* 190 P.3d 788, 790 (Colo.App.2008).

¶ 15 Section 14–10–128.5 is clear and unambiguous; it states the conditions for using an arbitrator in domestic relations cases to resolve disputes between the parties concerning their minor or dependent children. First, both parties must have a dispute concerning their minor or dependent children, such as parenting time, nonrecurring adjustments to child support, or disputed parenting decisions. Second, both parties must consent to having an arbitrator, and not the court, resolve this dispute. Third, the arbitrator, once appointed, has authority to settle the dispute concerning the minor children. Fourth, the arbitrator's award must be in writing and, once entered, is effective from the date of entry until either the arbitrator vacates, modifies, or corrects its award, or the court modifies the award following a de novo hearing. In other words, the parties may continue to use the arbitrator to vacate, modify, or correct its award, or may ask the court to modify such an award.

¶ 16 This statutory scheme makes sense because entering into arbitration is voluntary and because the good faith of the parties dictates whether any of the arbitrator's awards will be followed from the effective date of the award. *See Estate of Guido v. Exempla, Inc.,* 2012 COA 48, ¶ 19, 292 P.3d 996 (noting the precursor to section 13–22–222(1) "encouraged the parties voluntarily to treat the award as final and binding, for[ ]going judicial proceedings altogether").

¶ 17 Under section 14–10–128.5, the fact that the arbitrator's awards were *effective* from the date the arbitrator entered them is not in dispute. Section 14–10–128.5, however, does not mention how to *enforce* an arbitrator's award that has become effective if one party should fail to follow that award. Because it does not, and we are to construe section 14–10–128.5 in pari materia with the Uniform Arbitration Act (UAA) if possible, *see In re Marriage of Popack,* 998 P.2d 464, 469 (Colo.App.2000), we may turn to provisions of the UAA for guidance.

¶ 18 Section 13–22–222(1) of the UAA provides that a party to an arbitration proceeding may move the district court for an order confirming the award:

> After a party to an arbitration proceeding receives notice of an award, the party may make a motion to the court for an order confirming the award[,] at which time the court shall issue a confirming order unless the award is modified or corrected pursuant to section 13–22–220[, C.R.S.2011,] or [section] 13–22–224[, C.R.S.2011,] or is vacated pursuant to section 13–22–223[, C.R.S.2011].

¶ 19 Hence, an arbitrator's award does not constitute an "order" of the district court unless and until a party makes a motion to the court for an order confirming the award, and the court issues an order confirming the arbitration award pursuant to section 13–22–222(1). Only then does the arbitrator's award become enforceable as an order of the court. Indeed, the arbitrator appeared to recognize this requirement when, in the award, she directed the parties to file the award with the court.

¶ 20 *In re Marriage of Barker,* 251 P.3d 591 (Colo.App.2010), does not change this result. Although the division in *Barker* broadly stated that "[i]n dissolution cases, the [UDMA], sections 14–10–101 to –133, C.R.S. 201[1], takes precedence over other laws, including those applicable to alternative dispute resolution generally," 251 P.3d at 592, *Barker* addressed a mediated agreement to modify parenting time decided under the best interests of the child standard—a matter exclusive to the UDMA. The mother in *Barker* contended only that, even though the agreement's terms were recited on the rec-

ord and both parties had agreed the terms were in the child's best interests, the agreement was not reduced to writing and signed by the parties as section 13–22–308, C.R.S. 2011, required. *Id.* In contrast to *Barker*, there is no independent best interests standard that governs enforcement of an arbitrator's award entered pursuant to section 14–10–128.5.

¶ 21 *In re Marriage of Rozzi*, 190 P.3d 815, 819 (Colo.App.2008), does not change this result either. In *Rozzi*, the division addressed an apparent conflict between section 13–22–313(1), C.R.S.2011 (prohibiting a court from referring a case "to any ancillary form of alternative dispute resolution" in some circumstances involving spousal abuse), of the UAA, and section 14–10–128.1(1), C.R.S. 2011 (permitting a court to appoint a parenting coordinator as a neutral third party to assist in the resolution of the parties' disputes concerning parental responsibilities), of the UDMA. *See Rozzi*, 190 P.3d at 819. Guided by the principle that, if statutory provisions conflict or cannot be harmonized, the specific provision controls over the general provision, the division held that section 14–10–128.1(1), as the more specific provision, was controlling. *Id.* In contrast to *Rozzi*, because section 14–10–128.5 has no enforcement provision, there is no conflict between the UAA and UDMA. Hence, in this case, the UDMA does not control enforcement of the arbitrator's award.

¶ 22 Accordingly, where, as here, one party fails to comply with an arbitration award under section 14–10–128.5, the other party may make a motion to the district court for an order confirming that award under section 13–22–222(1). Once the court issues a confirming order, this order is enforceable through a contempt action. In this way, the arbitrator's award under section 14–10–128.5 can be given the weight of a court order, and the purposes and designs of both statutes are harmonized and maintained.

¶ 23 Because neither wife nor husband made a motion to the court for an order confirming the arbitrator's awards, those awards were not enforceable as an "order of the court," and husband may not be held in contempt on that basis. *See* C.R.C.P.

107(a)(1). Therefore, we conclude the district court magistrate could not find husband in contempt of the district court for failing to follow the arbitrator's awards that were not confirmed by the district court. Accordingly, we vacate the court's order denying husband's petition for review, and we remand the case with directions to vacate the magistrate's finding that husband was in contempt of court and the imposition of punitive sanctions against him.

¶ 24 In light of our holding, we need not address husband's remaining contentions.

### III. Wife's Contentions

¶ 25 We now consider whether wife is entitled to costs and attorney fees on appeal. We conclude she is not.

¶ 26 Wife requests her costs pursuant to C.A.R. 38(d), contending husband's appeal is frivolous; based on our disposition, however, husband's appeal is not frivolous. *See Zivian v. Brooke–Hitching*, 28 P.3d 970, 974 (Colo.App.2001) (claim on appeal is frivolous under C.A.R. 38(d) "if the proponent has no rational argument to support it based on the evidence or the law"); *see also Schmedeman*, 190 P.3d at 793.

¶ 27 Wife also requests appellate attorney fees pursuant to section 13–17–102(4), C.R.S. 2011, contending husband's appeal lacks substantial justification; based on our disposition, however, husband's appeal does not lack substantial justification. *See Giguere v. SJS Family Enters., Ltd.*, 155 P.3d 462, 474 (Colo.App.2006) ("An appeal lacks substantial justification ... under [section] 13–17–102(4) when the appellant's briefs fail to set forth, in a manner consistent with C.A.R. 28, a coherent assertion of error, supported by legal authority.").

¶ 28 We do not address wife's request for appellate attorney fees under section 14–10–119, C.R.S.2011, because that request is more appropriately addressed to the district court. *People in Interest of S.N.V.*, 284 P.3d 147, 151 (Colo.App.2011).

¶ 29 The district court's order is vacated, and the case is remanded with directions to vacate the magistrate's contempt judgment.

Judge CARPARELLI concurs.

Judge J. JONES dissents.

Judge J. JONES dissenting.

¶ 30 The majority concludes that husband cannot be found in contempt for failing to comply with the arbitrator's January 22 and February 27, 2009, awards because (1) wife did not petition the district court to confirm them pursuant to section 13–22–222(1), C.R.S.2011; and (2) absent such confirmation there was no order of a "judge, magistrate, commissioner, referee, or ... master," *see* C.R.C.P. 107(a)(6), which could be enforced by the court's contempt power. I disagree with the majority's reasoning, for the reasons discussed below. Therefore, I respectfully dissent from the majority's decision, though I would remand the case for further findings.

¶ 31 I am unpersuaded by the majority's conclusion that the magistrate could not find husband in contempt for violating the arbitrator's awards that had not been confirmed by the court pursuant to section 13–22–222(1).

¶ 32 That statute provides:

After a party to an arbitration proceeding receives notice of an award, the party may make a motion to the court for an order confirming the award, at which time the court shall issue a confirming order unless the award is modified or corrected pursuant to section 13–22–220 or 13–22–224 or is vacated pursuant to section 13–22–223.

¶ 33 Here, however, the arbitrator was appointed under section 14–10–128.5(1), C.R.S. 2011, not any provision of the Uniform Arbitration Act. Section 14–10–128.5(1) provides in relevant part:

The arbitrator's award shall be effective immediately upon entry and shall continue in effect until vacated by the arbitrator ..., modified or corrected by the arbitrator pursuant to [section 13–22–220, C.R.S. 2011], or modified by the court pursuant to a de novo hearing....

¶ 34 "In dissolution cases, the Uniform Dissolution of Marriage Act (UDMA), sections 14–10–101 to –133, C.R.S. 201[1], takes

precedence over other laws, including those applicable to alternative dispute resolution generally." *In re Marriage of Barker,* 251 P.3d 591, 592 (Colo.App.2010); *see also In re Marriage of Rozzi,* 190 P.3d 815, 819 (Colo. App.2008). Accordingly, even assuming that the majority and husband are correct that an arbitration award, in general, cannot be enforced until confirmed under section 13–22–222(1), section 14–10–128.5(1) provides to the contrary. In the case of parental dispute arbitration awards, such an award is effective immediately upon entry and continually thereafter, unless and until it is vacated, modified, or corrected by the arbitrator (not the court) under sections 13–22–223 and 13–22–224 or modified by the court after a de novo hearing. § 14–10–128.5(1)–(2), C.R.S. 2011. Significantly, section 14–10–128.5 does not even mention confirmation of an arbitrator's award, much less confirmation pursuant to section 13–22–222(1).

¶ 35 Because an arbitrator's award entered pursuant to section 14–10–128.5 is effective immediately, it logically follows that it may be enforced immediately, that is, if "effective" and "in effect" are to have any substantive meaning. Such an award does not differ in any meaningful way from an order of a "judge, magistrate, commissioner, referee ... or master." Indeed, it is in effect a court order, and is otherwise treated as such under the statutes governing resolution of parental disputes.

¶ 36 In my view, then, an award of an arbitrator under section 14–10–128.5 is tantamount to an order of the court. By choosing the procedure of section 14–10–128.5 (which is entirely voluntary), the parties have agreed to binding decision-making by someone other than the district court judge, much in the way that a court may appoint a master to resolve certain disputes in civil litigation.[1] Therefore, I reject the majority's hypertechnical reading of C.R.C.P. 107(a)(6), in that I view the arbitrator's award as an order of the "court" and akin to an order of a "master." To do otherwise is, I submit, to ignore the plain language of section 14–10–128.5

---

1. In the arbitration agreement entered into by the parties, they stated: "The parties understand

that this process is an alternative to having their case heard in court by a judge."

concerning the immediate and continuing effect of an award entered pursuant thereto.

¶ 37 I have considered husband's remaining arguments, and conclude that they are without merit, with one exception. I agree with his contention that the magistrate erred in imposing punitive sanctions without finding that his behavior was offensive to the authority and dignity of the court.

¶ 38 Preliminarily, I reject wife's contention that husband may not raise this issue on appeal because he did not raise it in his petition for district court review of the magistrate's order. Because C.R.C.P. 107(d)(1) provides authority to impose punitive sanctions only when the court expressly finds that the contemnor's behavior was offensive to the authority and dignity of the court, this issue implicates a court's subject matter jurisdiction, and thus may be raised at any time, including for the first time on appeal. *Cf. Sanchez v. State*, 730 P.2d 328, 332 (Colo.1986)(failure to make necessary statutory finding that conduct was knowing and deliberate deemed jurisdictional such that issue could be raised at any time); *People v. Anaya*, 894 P.2d 28, 31 (Colo.App.1994)(court has no jurisdiction to impose a sentence beyond the court's statutory authority and issue may be raised for the first time on appeal).

¶ 39 "In an indirect punitive contempt proceeding, the court may impose a fine, imprisonment, or both if the court expressly finds that the person's conduct was offensive to the authority and dignity of the court." *In re Marriage of Nussbeck*, 974 P.2d 493, 499 (Colo.1999); *see also* C.R.C.P. 107(d)(1); *Lobb v. Hodges*, 641 P.2d 310, 311 (Colo.App. 1982). Although the court need not make a finding using the exact language of C.R.C.P. 107(d)(1), the language used must be sufficient to comply with the rule. *Lobb*, 641 P.2d at 311; *see also In re Marriage of Joseph*, 44 Colo.App. 128, 130, 613 P.2d 344, 345 (1980) (finding that the contemnor acted so as to flaunt the dignity of the court and that the reason for the punitive order, to vindicate the dignity of the court, was sufficient).

¶ 40 Here, husband was charged with indirect contempt, meaning that the alleged contemptuous behavior occurred outside the presence of the court, and punitive sanctions were sought against him. *See* C.R.C.P. 107(a)(3)-(4). Neither the magistrate's bench ruling nor the written order contains a finding, however, that can be construed as a determination regarding whether husband's conduct was offensive to the authority and dignity of the court.

¶ 41 I disagree with wife's contention that the magistrate's recitation of the allegations in her motion, together with the finding that the magistrate was not persuaded that husband has any respect for the court's orders, was sufficient under C.R.C.P. 107(d)(1). Husband was properly informed by the citation and motion that punishment *could* be imposed to vindicate the authority and dignity of the court. *See People v. Razatos*, 699 P.2d 970, 975 (Colo.1985)(contemnor must first be noticed that punishment may be imposed in order to vindicate the dignity of the court in order for the court to have the foundation to enter such findings to support contempt). The magistrate was still required to find, with supporting evidence, however, that husband's behavior was in fact offensive to the authority and dignity of the court. *See Marshall v. Marshall*, 35 Colo. App. 442, 445, 536 P.2d 845, 848 (1975)(trial court must both inform the alleged contemnor that punishment may be imposed to vindicate the dignity of the court, and make findings of fact, supported by evidence, that the contemnor's conduct constitutes misbehavior offensive to the authority and dignity of the court), *aff'd in part and rev'd in part on other grounds*, 191 Colo. 165, 166, 551 P.2d 709, 709 (1976); *see also Lobb*, 641 P.2d at 311 ("Because an alleged contemner's [sic] liberty and property are at risk, the added precaution of the specific finding of offense to the dignity of the court is required."). The magistrate failed to make this finding here.

¶ 42 Accordingly, I would vacate the contempt judgment and the sanctions imposed and remand for the magistrate to reconsider the contempt charge and either dismiss the proceedings or enter a new order supported by the requisite findings. *See Lobb*, 641 P.2d at 311.