25CA0275 Marriage of Kostecki 06-25-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0275
Boulder County District Court No. 23DR30135
Honorable Andrew Hartman, Judge

---

In re the Marriage of

Curtis W. Kostecki,

Appellant and Cross-Appellee,

and

Amy Dawn Kostecki,

Appellee and Cross-Appellant.

---

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division IV
Opinion by JUDGE BROWN
Freyre and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced June 25, 2026

---

O'Brien Law Firm, LLC, Shauna O'Brien, Lafayette, Colorado, for Appellant and Cross-Appellee

Robert M. Dwyer, Denver, Colorado, for Appellee and Cross-Appellant

¶ 1    In this dissolution of marriage proceeding between Curtis W. Kostecki (husband) and Amy Dawn Kostecki (wife), husband appeals the district court's amended permanent orders dividing their marital property.  We reverse and remand the case to the district court for further proceedings consistent with this opinion.

## I.    Background

¶ 2    Husband and wife married in 2006 and have three children, two of whom were minors at the time of the dissolution.  After the district court issued its permanent orders, husband filed a motion to amend the findings and judgment pursuant to C.R.C.P. 59 and 60, along with a revised property allocation spreadsheet.  The court amended its permanent orders, issuing its own revised property allocation spreadsheet.

¶ 3    As relevant to husband's appeal, in the amended permanent orders, the court allocated two marital real properties as follows:

- The court allocated the marital residence to husband.  It determined that the "net equity value" of the marital residence was $164,643.74.  It then ordered husband to pay wife $82,321.87 for her half of the "net equity value."

- The court allocated a commercial property to husband. It determined that the "net equity value" of the commercial property was $106,171.35. It then ordered husband to pay wife $53,085.68 for her half of the "net equity value."

- The court ordered husband to make these payments — which it characterized as an "equalization payment" and which totaled $135,407.55 — to wife by a certain deadline or he would be required to sell the properties.[1]

¶ 4    The court proceeded to divide the remaining marital assets and debts between the parties. When summarizing its equitable division of marital property in the written permanent orders, the court indicated that it allocated $154,801.01 in marital assets to wife and $156,800.07 in marital assets to husband. The court did not indicate whether these figures accounted for the equalization payment husband was to make to wife for her share of the equity in the marital properties, but it appears that the court added the

---

[1] In the written permanent order, the district court transposed some numbers and ordered husband to pay wife $82,231.87 as her share of equity from the marital home. But half of $164,643.74 is $82,321.87. And that figure plus $53,085.68, representing wife's half of the equity of the commercial property, equals $135,407.55.

2

equalization payment to wife's allocation but did not subtract it from husband's. Indeed, the property allocation spreadsheet accompanying the amended permanent orders reflected that the court allocated $19,393.46 in marital assets to wife and $156,800.07 in marital assets to husband before accounting for the equalization payment.

¶ 5    Husband filed a second motion to amend the permanent orders, arguing that the court miscalculated the total marital debt by $3,250 (the cost of a private school tuition payment)[2] and either miscalculated wife's equalization payment or inequitably distributed the marital estate eighty-eight percent to wife and twelve percent to husband. The court denied husband's second motion to amend. Husband appeals.[3]

---

[2] Husband reraises this contention on appeal. As best we can tell, the district court in fact allocated this debt to wife; it simply failed to include it in the total value of the marital estate. The figures we use in this opinion for the total value of the marital estate account for this debt, so we need not address the argument further. The parties may ask the court to clarify this issue on remand.

[3] Although wife initially filed a cross-appeal, she abandoned it in her answer brief.

## II. Legal Framework and Standards of Review

¶ 6 The district court has great latitude to equitably distribute marital property based on the facts and circumstances of the case, and we will not disturb its decision absent a clear abuse of discretion. *In re Marriage of Balanson*, 25 P.3d 28, 35 (Colo. 2001); *see In re Marriage of Wright*, 2020 COA 11, ¶ 3 (property division does not have to be equal, just equitable); *In re Marriage of Fischer*, 834 P.2d 270, 272 (Colo. App. 1992) (the mechanism employed by the district court in dividing marital property is a matter within its discretion). The district court abuses its discretion when its decision is manifestly arbitrary, unfair, or unreasonable, or when it misapplies the law. *In re Marriage of McSoud*, 131 P.3d 1208, 1212 (Colo. App. 2006).

¶ 7 The court must make sufficiently explicit findings of fact and conclusions of law to give us a clear understanding of the basis of its order and to enable us to determine the grounds upon which it rendered its decision. *In re Marriage of Rozzi*, 190 P.3d 815, 822 (Colo. App. 2008). We review the adequacy of the court's ruling de novo. *People v. Shifrin*, 2014 COA 14, ¶ 90.

### III. Analysis

¶ 8     Husband argues that the court erred in allocating $154,801.01 in marital assets to wife and $156,800.07 in marital assets to husband because that allocation exceeds the total value of the marital estate, which was $176,193.53 ($156,800.07 allocated to husband before equalization + $19,393.46 allocated to wife before equalization = $176,193.53).  He argues that to equalize the disproportionate allocation of the estate, he should have been ordered to pay wife $68,703.31 ($156,800.07 - $19,393.46 = $137,406.61 ÷ 2 = $68,703.31) rather than $135,407.55.

¶ 9     Alternatively, husband argues that if the court truly intended to allocate roughly $154,800 to wife, it erred by inequitably allocating eighty-eight percent of the marital estate to wife ($19,393.46 + $135,407.55 equalization payment = $154,801.01 ÷ $176,193.53 = 87.9%) and only twelve percent to him ($156,800.07 - $135,407.55 equalization payment = $21,392.52 ÷ $176,193.53 = 12.1%).

¶ 10    We cannot discern what outcome the district court intended.  Some parts of the amended permanent orders suggest that the court intended a roughly equal division of the marital estate.  For

example, it divided the net equity in the marital real properties equally. And when it summarized how much of the marital estate it believed it had allocated to each party, the split was roughly fifty-fifty ($154,801.01 to wife and $156,800.07 to husband). But if the court truly wished to divide the estate equally, it made a mathematical error. The amended permanent orders required husband to pay wife half of the net equity in the parties' real properties as an equalization payment. Although the court added the equalization payment to wife's share of the marital estate, it did not subtract the equalization payment from husband's share, artificially inflating husband's share and the equalization payment needed to balance the distribution. Husband is correct that, to divide the estate equally, the court should have ordered him to pay wife roughly $68,700.

¶ 11     Alternatively, some parts of the amended permanent orders suggest that the court intended a lopsided allocation to wife. For example, the court found the equalization payment to wife to be "fair and equitable because [husband] will maintain ownership of the marital property and may elect to either maintain or sell the assets." The court also noted that husband was allocated his

business and "maintains higher earning potential" from the business and real properties. But it noted these things immediately after summarizing a roughly fifty-fifty division of the marital estate. If the court truly intended to allocate wife eighty-eight percent of the marital estate, it should have clearly said so and explained why such a disproportionate allocation was nonetheless equitable.

¶ 12    Given this record, we cannot discern the court's intention: to allocate the estate equally or to allocate a significantly disproportionate share to wife. *See Rozzi*, 190 P.3d at 822. Accordingly, we reverse the property division provisions of the amended permanent orders and remand the case to the district court for clarification or reconsideration of the entire property division as necessary. *See In re Marriage of Zander*, 2019 COA 149, ¶ 30, *aff'd*, 2021 CO 12; *In re Marriage of Vittetoe*, 2016 COA 71, ¶ 38. If the court reconsiders the property division, it must consider the parties' economic circumstances at the time of the remand, *Zander*, ¶ 30, and reconsider its award of $1 in nominal maintenance payable to wife, *In re Marriage of Nevarez*, 170 P.3d 808, 815 (Colo. App. 2007). But because "property shall be valued as of the date of the decree or as of the date of the hearing on

disposition of property if such hearing precedes the date of the decree," § 14-10-113(5), C.R.S. 2025; *In re Marriage of Finer*, 920 P.2d 325, 331 (Colo. App. 1996), and because no party challenged the valuation of any marital asset, the court should use the same property and debt valuations it found in its amended permanent orders. *See In re Marriage of Capparelli*, 2024 COA 103M, ¶ 26. The court must make findings of fact and conclusions of law that will enable a reviewing court to understand the basis of its order and determine the grounds upon which it rendered its decision. *See Rozzi*, 190 P.3d at 822.

## IV. Disposition

¶ 13 The judgment is reversed, and the case is remanded to the district court for further proceedings consistent with this opinion.

JUDGE FREYRE and JUDGE SCHUTZ concur.